THE HON. WILLIAM L. HOLLOWAY, ⎫
⎬ Associate Justices.
THE HON. CHARLES H. COOPER, ⎭

SHEA, APPELLANT, *v.* NORTH-BUTTE MINING CO. ET AL., RESPONDENTS.

(No. 4,348.)

(Submitted February 10, 1919. Decided March 8, 1919.)

[179 Pac. 499.]

*Workmen's Compensation — Statutes and Statutory Construction — Constitution — Election — Presumptions — Waiver— Industrial Accident Board — Courts — "Judicial Power"— Office and Officers.*

Workmen's Compensation—Theory of Act.
  1.  The theory upon which Workmen's Compensation Acts are placed upon the statute books is that the loss occasioned by reason of an injury to the employee shall not be borne by him alone but directly by the industry itself, and indirectly by the public.
Same—Constitutionality of Act—Rule for Determining.
  2.  The rule that a statute will not be declared invalid on constitutional grounds unless its invalidity is made to appear beyond a reasonable doubt, *held* to apply with particular force where, as in the case of the Workmen's Compensation Act, the statute seems to have been

(522)

found satisfactory after a four-year period of operation, by those directly affected by it, to-wit, the employer and the employee.

Same—Constitution—Guaranteeing Access to Courts.

3. *Held,* that the Workmen's Compensation Act (Laws 1915, Chap. 96) is not repugnant to section 6, Article III of the Constitution, as closing access to the courts by the injured employee and compelling him to seek relief through the Industrial Accident Board.

Same—Effect of Election to be Bound by Act.

4. When an employee has elected to become subject to the provisions of the Compensation Act, neither he nor his personal representative in case of the former's death may thereafter prosecute an action for damages against the employer for an injury suffered by him during the course of his employment.

Constitution—Access to Courts—Meaning of Guaranty.

5. Under section 6, Article III, of the Constitution, courts must be accessible to all persons alike, without discrimination, at the time or times and the place or places appointed for their sitting, and afford a speedy remedy for every injury which the law recognizes or declares to be actionable.

Personal Injuries—Right of Action—Power of Legislature.

6. The legislature cannot destroy vested rights; therefore where an injury has occurred for which the injured person has a right of action, the legislature cannot deny him a remedy.

Same—Common-law Rules—Legislature may Abolish.

7. No one has a vested right in any rule of the common law; and the technical defenses recognized by it in personal injury actions, such as contributory negligence, assumption of risk, *etc.*, as well as technical rights of action arising out of the negligence of the employer, may be abolished or modified by the legislature without transgressing any constitutional guaranty.

Workmen's Compensation—Effect of Election to be Bound by Act.

8. Inasmuch as the Compensation Act (Laws 1915, Chap. 96) becomes binding upon the employer and employee only at their election, neither may thereafter object to its enforcement, and the fact that the modes in which they may indicate their election is different, does not make it objectionable on the ground that it discriminates against either employer or employee.

[As to right to and effect of election with respect to acceptance of provisions of Workmen's Compensation Act, see note in Ann. Cas. 1918B, 715.]

Legislation—Who may Waive Benefit of.

9. A party may waive the advantage of any provision of law which was intended solely for his benefit, so long as the waiver does not violate public policy.

Legislature—Power to Establish Presumptions.

10. The legislature may establish presumptions (and rules relating to the burden of proof), provided they are not unreasonable and not conclusive of the rights of parties.

Workmen's Compensation—Election—Presumptions.

11. The silence of an employee, when given an opportunity to elect whether he will be bound or not bound by the provisions of the Workmen's Compensation Law, establishes a presumption that he elects to become subject to it.

Same—Right of Action—Waiver.

12. It is competent for a party to waive his right to have a cause of action determined by a court before it actually arises, especially

where the legislature has provided a substitute remedy,—as it has under the Compensation Act,—which renders his right to relief absolute.

Same—Industrial Accident Board not Court—Constitution.
13. Held, that the Industrial Accident Board is not a court within the meaning of the Constitution, it not being vested with judicial power, but is a ministerial and administrative body with incidental *quasi*-judicial powers.

Constitution—"Judicial Power"—Definition.
14. "Judicial power," within the meaning of section 1, Article VIII, of the Constitution, is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.

Same—Statutes—Who may not Assail.
15. One not injured by the provision of an Act deemed by him unconstitutional is not in position to assail it.

Same—Statutes—Part Valid and Part Invalid—Effect.
16. Where, after elimination of that portion of a statute which is invalid, sufficient remains to render it operative and reasonably effective to carry out the main purpose of the legislature in enacting it, courts must to that extent uphold it.

Workmen's Compensation—Industrial Accident Board—State Auditor—Holding Two Offices—Power of Legislature.
17. The fact that the state auditor is a member of the Industrial Accident Board does not render the Compensation Act unconstitutional on the ground that he thus holds two offices, since the only limitation upon the legislature in imposing duties upon that officer, under section 1, Article IV, of the Constitution, prohibits the imposition of duties appertaining to the legislative or judicial—not the executive—departments of government.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Murty Shea against the North-Butte Mining Company, a corporation, and Norman Braly. Judgment for defendants dismissing the action. Plaintiff appeals. Affirmed.

*Messrs. Maury & Melzner, Mr. H. H. Parsons, Mr. E. K. Cheadle, Mr. W. D. Rankin* and *Mr. B. K. Wheeler,* for Appellant, submitted an original and a supplemental brief; *Mr. H. L. Maury* argued the cause orally.

*Mr. L. O. Evans, Mr. W. B. Rodgers* and *Mr. D. M. Kelly,* for Respondents, submitted a brief; *Mr. Rodgers* argued the cause orally.

The method of election provided for in our Workmen's Compensation Act is wholly unobjectionable, and like methods have been repeatedly affirmed by the courts. (*Opinion of the Jus-*

*tices,* 209 Mass. 607, 610, 96 N. E. 308; *Young* v. *Duncan,* 218
Mass. 346, 106 N. E. 1; *Sayles* v. *Foley,* 38 R. I. 484, 96 Atl.
340, 346; *Sexton* v. *Newark Dist. Telegraph Co.,* 84 N. J. L. 85,-
86 Atl. 451, 454; *Borgnis* v. *Falk Co.,* 147 Wis. 327, 37 L. R. A.
(n. s.) 489, 493, 133 N. W. 209; *Hunter* v. *Colfax etc. Co.,* 175
Iowa, 245, Ann. Cas. 1917E, 803, L. R. A. 1917D, 15, 154 N. W.
1037, 157 N. W. 145; *Hawkins* v. *Bleakly,* 243 U. S. 210, Ann.
Cas. 1917D, 637, 61 L. Ed. 678, 37 Sup. Ct. Rep. 255; *Mathison*
v. *Minneapolis Street Ry. Co.,* 126 Minn. 286, L. R. A. 1916D,
pp. 412, 417, 148 N. W. 71; *Deibeikis* v. *Link-Belt Co.,* 261 Ill.
454, Ann. Cas. 1915A, 241, 104 N. E. 211; *Keeran* v. *Peoria etc.
Traction Co.,* 277 Ill. 413, 115 N. E. 636; *Mackin* v. *Detroit-
Timkin Axle Co.,* 187 Mich. 8, 153 N. W. 49, 51; *Middleton* v.
*Texas Power & Light Co.,* 108 Tex. 96, 185 S. W. 556, 557;
*State* v. *Creamer,* 85 Ohio St. 349, 39 L. R. A. (n. s.) 694, 695,
97 N. E. 602.)

Taking into account the unobjectionable character of the
election provided for, it follows that the constitutional objec-
tions urged by the appellant are not available to an employee
who, prior to the happening of an injury, has elected to be
bound by the provisions of our Workmen's Compensation Act,
when the employer has likewise so elected to be bound thereby.
(Cases cited *supra; Foster* v. *Morse,* 132 Mass. 354, 42 Am. Rep.
438; *Porten* v. *Peterson,* 139 Minn. 152, 166 N. W. 183; *Evan-
hoff* v. *State Industrial Acc. Com.,* 78 Or. 503, 154 Pac. 106;
*Shade* v. *Ash Grove L. & P. C. Co.,* 93 Kan. 257, 144 Pac. 249.)
The effect of these elective features of Compensation Acts, as
touching constitutionality, has also been given force in the
case of *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 59 L. Ed. 364,
35 Sup. Ct. Rep. 167, 7 N. C. C. A. 570, wherein the supreme
court of the United States said: "No employer is obliged to go
into this plan. He may stay out of it altogether if he will."
(See, also, *Albanese* v. *Stewart,* 78 Misc. Rep. 581, 138 N. Y.
Supp. 942; *Mackin* v. *Detroit-Timkin Axle Co., supra.*)

The powers conferred upon the Industrial Accident-Board are
not judicial powers as that term is used in section 1 of Article

VIII of our state Constitution. (*Muskrat* v. *United States,* 219 U. S. 346, 356, 55 L. Ed. 246, 31 Sup. Ct. Rep. 250; *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 8, 153 N. W. 49, 53; *Underwood* v. *McDuffee,* 15 Mich. 361, 93 Am. Dec. 194; *State* v. *Creamer,* 85 Ohio St. 349, 39 L. R. A. (n. s.) 694, 97 N. E. 602; *Deibeikis* v. *Link-Belt Co., supra; Middleton* v. *Texas Power & L. Co.,* 108 Tex. 96, 185 S. W. 556; *Menominee Bay Shore Lumber Co.* v. *Industrial Acc. Com.,* 162 Wis. 344, 176 N. W. 151.)

The provision of the Act appointing the state auditor a member of the Industrial Accident Board does not render the law either unconstitutional, inoperative or void. The only vice suggested in relation to the Industrial Accident Board is that one member, to-wit, the state auditor, is ineligible, by virtue of being such state officer, to fill the position of member of the board. The universal current of authority seems to be that, although ineligible by reason of either legal or constitutional provision, to hold an office, nevertheless the incumbent thereof, actually possessing and exercising its duties, is a *de facto* officer. (*Huyck* v. *Graham,* 82 Mich. 353, 46 N. W. 781, 782; *Stokes* v. *Acklen* (Tenn. Ch.), 46 S. W. 316, 317; *In re Corum,* 62 Kan. 271, 84 Am. St. Rep. 382, 62 Pac. 661; *Missouri Pac. Ry. Co.* v. *Preston,* 63 Kan. 819, 66 Pac. 1050; *McGregor* v. *Balch,* 14 Vt. 428, 39 Am. Dec. 231; *Rodman* v. *Harcourt,* 4 B. Mon. (43 Ky.) 224; *Old Dominion Building & Loan Assn.* v. *Sohn,* 54 W. Va. 101, 46 S. E. 222; *Davidson* v. *State,* 135 Ind. 254, 34 N. E. 972; *Donough* v. *Dewey (Hollister),* 82 Mich. 309, 46 N. W. 782, 783.) In the *Donough Case, supra,* a woman had been elected inspector of the school district. The law and the Constitution provided for three inspectors. By reason of her sex the woman was constitutionally disqualified to hold the office. It was held that, although ineligible to the office, this woman was a *de facto* officer, and it was also held that inasmuch as two members of the board were authorized to act, and had acted together, their action was legal although it should be ruled that said woman was not an officer *de facto.*

The Act does not violate the constitutional rights of an employee in reference to a jury trial. This question has been set at rest in the case of *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 196, 119 Pac. 554. Although no additional authority is needed, we invite the court's attention to the following: *Mountain Timber Co.* v. *State of Washington,* 243 U. S. 219, Ann. Cas. 1917D, 642, 61 L. Ed. 685, 37 Sup. Ct. Rep. 260; *State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 37 L. R. A. (n. s.) 466, 117 Pac. 1101; *Sexton* v. *Newark Dist. Tel. Co., supra; State* v. *Creamer, supra; Evanhoff* v. *State Industrial Accident Com., supra; Mackin* v. *Detroit-Timkin Axle Co., supra; Deibeikis* v. *Link-Belt Co., supra; Anderson* v. *Carnegie Steel Co.,* 255 Pa. St. 33, 99 Atl. 215; *Young* v. *Duncan,* 218 Mass. 346, 106 N. E. 1; *Raymond* v. *Chicago, M. & St. P. Ry. Co.,* 233 Fed. 239, 147 C. C. A. 245; *Hunter* v. *Colfax Consolidated Coal Co.,* 175 Iowa, 245, Ann. Cas. 1917E, 803, L. R. A. 1917D, 15, 154 N. W. 1037, 157 N. W. 145; *New York Central Ry. Co.* v. *White,* 243 U. S. 188, Ann. Cas. 1917D, 629, L. R. A. 1917D, 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247; *Hawkins* v. *Bleakly, supra.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant North-Butte Mining Company is a corporation organized under the laws of the state of Minnesota, and is the owner of mining claims which it is engaged in operating in Silver Bow county. When the cause of action upon which recovery is sought herein arose, the defendant Norman Braly was its superintendent. This action was brought to recover damages for a personal injury alleged to have been suffered by the plaintiff through the negligence of the defendants during the course of his employment as a miner. The complaint is in the ordinary form and alleges facts sufficient to sustain a recovery, unless a recovery is precluded by the provisions of the Act passed by the Fourteenth Legislative Assembly commonly known as the Workmen's Compensation Law (Chap. 96, Laws

1915). Denying all the allegations of the complaint charging them with negligence, the defendants alleged as a complete affirmative defense that at the time the plaintiff was injured, the defendant North-Butte Mining Company had elected to become bound by Plan No. 1 of the Workmen's Compensation Law and had performed all the conditions prescribed by the Act to render such election effective; that the plaintiff had also pursuant to the terms of the Act elected to be bound thereby; and that, both plaintiff and defendant North-Butte Mining Company having made their election, the liability of the defendants to compensate the plaintiff for any injury suffered during the course of his employment through any negligent act or omission by them was such only as in that Act provided. To this affirmative defense the plaintiff interposed a general demurrer, which was overruled. Thereupon, the plaintiff refusing to join issue by reply, upon application of defendants his default was entered and judgment rendered and entered against him dismissing the action with costs. From this judgment he has appealed.

Plaintiff does not question the sufficiency of the answer to constitute a defense, provided the Workmen's Compensation Law is valid. Quoting from the brief of counsel: "The only question involved in this case is the constitutionality of the Workmen's Compensation Act."

The causes, from a historical point of view, impelling the enactment of Workmen's Compensation Laws, and the object to be served by them, have heretofore been stated somewhat at length by this court. (*Cunningham* v. *Northwestern Improvement Co.,* 44 Mont. 180, 119 Pac. 554; *Lewis & Clark County* v. *Industrial Accident Board,* 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.) It is not necessary to restate them. It is sufficient for present purposes to call to mind that the object sought was to substitute for the imperfect and economically wasteful common-law system by private action by the injured employee for damages for negligent fault on the part of the employer, which, while attended with great delay and

waste, compensated those employees only who were able to establish the proximate connection between the fault and the injury, a system by which every employee in a hazardous industry might receive compensation for any injury suffered by him arising out of and during the course of the employment, whether the employer should be at fault or not, except only when the injury should be caused by the willful act of the employee. In other words, the theory of such legislation [1] is that loss occasioned by reason of injury to the employee shall not be borne by the employee alone—as it was under the common-law system—but directly by the industry itself and indirectly by the public, just as is the deterioration of the buildings, machinery and other appliances necessary to enable the employer to carry on the particular industry.

To every thinking person the object sought commends itself not only as wise from an economic point of view, but also as eminently just and humane. Such legislation, in whatever form it may provide compensation, has been formulated after the most patient study and investigation by our most eminent men in professional and industrial walks of life, in order to avoid such obstructions or limitations as might be encountered [2] under our written constitutions. A persistent enlightened public opinion has brought about the enactment of such laws in a great number of the states of the Union. Some of them are elective, while others are compulsory; and though the validity of many—perhaps all—of them has been challenged on almost every possible constitutional ground, they have generally been upheld. Our own statute is elective. While it has been criticised on the ground that the schedule of rates of compensation provided for by it is not sufficiently liberal and also on the ground that it makes an unwise and unjust discrimination against the dependents of aliens, yet that it operates more justly and more satisfactorily than the old system is demonstrated by the fact that as soon as it became operative, on July 1, 1915, the great body of employers as well as of employees in the various industries in the state accepted

its provisions and have since been subject to them, as administered by the Industrial Accident Board created by the Act for that purpose. Under these circumstances, the rule that an Act of the legislature will not be declared invalid because it is repugnant to some provision of the Constitution unless its invalidity is made to appear beyond a reasonable doubt, applies with peculiar force.

It is said that the Act is repugnant to section 6 of Article III of the Constitution, which declares that "courts of justice shall [3] be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial or delay." The respect wherein the Act is repugnant to this provision is not specifically pointed out, but we gather from the brief of counsel that their objection is that, though the Act is elective, it in effect closes access to the courts by the injured employee and compels him to seek relief, if he can obtain any at all, through the Industrial Accident Board. In other words, since the section declares in express terms that there shall be a judicial remedy for every wrong suffered by one person at the hands of another, it is beyond the power of the legislature to provide any other remedy, though such other remedy is entirely optional.

The Act is very long, and we shall not undertake to quote it. It will be sufficient to state the substance of the provisions which are made the points of attack by counsel. The modes provided by which the election must be made by both the employer and employee are prescribed in sections 3(f), 3(g), 3(h), 3(i) and 3(j). The employer is required to file with the Industrial Accident Board his election in such form as the board shall prescribe. It must state which of the three plans provided for he elects to be bound by, and a notice of it must be posted in a conspicuous place in his place of business, and also a copy of the notice filed with the board, accompanied by an affidavit showing that it has been posted as required. After the employer has made his election by complying with these

requirements, every workman then employed by him or there-
after entering his employment is conclusively presumed to be
bound by the Act, unless he elects not to be bound by it.   He
shall make such election by written notice in the form pre-
scribed by the board, served upon the employer, a copy of
which must be filed with the board together with proof of its
service.   If the employer fails to elect to come under the Act,
an ordinary action may be maintained against him for damages
for an injury suffered by the employee in the course of his
employment or for death resulting from such injury, but the
employer may not allege as a defense that the plaintiff was
guilty of contributory negligence, or that the injury was caused
by the negligence of a fellow-servant, or that the employee had
assumed the risk incident to the employment or arising out of
the failure of the employer to perform any of his common-law
duties.   On the other hand, if the employee elects not to be
bound after the employer has elected to be bound, all the
common-law defenses are available to the employer.   It is de-
clared to be the intention of the Act that the employer shall
elect to be bound before he becomes subject to it, and that the
employee shall be presumed to have elected to be subject to it
and under the plan stated by the employer, unless he shall
affirmatively elect not to be bound by it.   The employee may
revoke his election at any time.   The employer may make his
election at any time.   In case he does so he becomes subject
to the Act for the remainder of the fiscal year.   After having
once made his election he is bound for the rest of the fiscal
year under the plan first elected, and also for the succeeding
years unless within not less than thirty nor more than sixty
days before the end of the fiscal year he elects not to be bound
by it, or unless, within the same time, he elects to be bound
by some one of the other plans.   Such election must be made
in the same manner as the original election.   It is further de-
clared that when both the employer and employee have elected
to be bound by the Act its provisions shall be exclusive and the
election shall be held to be a surrender by both of their right

"to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common-law right or remedy, or proceeding whatever, for, or on account of, any personal injury to, or death of such employee," except as such rights are in the Act itself specifically granted. The election shall bind the employee himself and, in case of his death, his personal representative and all other persons claiming under him. The employer is likewise bound, together with those who may conduct his business during liquidation, bankruptcy or insolvency.

Three plans of compensation are provided for, differing in the mode by which benefits or compensation must be paid to the employee. Since no question is made as to the legal propriety of any of these plans or the mode of payment provided under each of them, it is not necessary to notice their distinguishing features.

The Industrial Accident Board consists of three members—the state commissioner of labor and industry, the state auditor, and the chairman, who is appointed by the Governor for a term of four years and receives a salary of $4,000 per annum. The other members receive no compensation other than their salaries as state officers. A majority of the board constitutes a quorum for the transaction of business. An appeal may be taken to the district court from any award made by the board, by any person affected by it. The trial in the district court must be *de novo*. The court may on good cause shown permit additional evidence to be introduced; otherwise the hearing must be upon the certified record of the proceedings of the board. If no appeal is taken the award of the board is final.

We agree with counsel that when an employee has elected to [4] become subject to the provisions of the Act, he may not thereafter prosecute an action for damages against the employer for an injury suffered by him during the course of his employment; nor may his personal representative prosecute such an action in case of his death. But counsel are in error in sup-

[5]   posing that for this reason the Compensation Act is repugnant to the section of the Constitution quoted.   Their contention is based upon a misconception of the scope of the guaranty therein contained.   A reading of the section discloses that it is addressed exclusively to the courts.   The courts are its sole subject matter and it relates directly to the duties of the judicial department of the government.   It means no more nor less than that under the provisions of the Constitution and laws constituting them, the courts must be accessible to all persons alike, without discrimination, at the time or times and the place or places appointed for their sitting, and afford a speedy remedy for every wrong recognized by law as being remediable in a court.   The term "injury" as therein used, means such an injury as the law recognizes or declares to be actionable.   Many of the state Constitutions contain similar provisions, and the courts, including our own, have held either expressly or impliedly that their meaning is that above stated.   (*Johnson* v. *Higgins,* 3 Met. (Ky.) (566), foot page 514; *Barkley* v. *Glover,* 4 Met. (Ky.) (44), foot page 39; *Templeton* v. *Linn County,* 22 Or. 313, 15 L. R. A. 730, 29 Pac. 795; *Martin's Executrix* v. *Martin,* 25 Ala. 201, 208; *Cunningham* v. *City of Denver,* 23 Colo. 18, 58 Am. St. Rep. 212, 45 Pac. 356; *Mountain Timber Co.* v. *State of Washington,* 243 U. S. 219, Ann. Cas. 1917D, 642, 61 L. Ed. 685, 37 Sup. Ct. Rep. 260; *Middleton* v. *Texas Power & L. Co.,* 108 Tex. 96, 185 S. W. 556; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 119 Pac. 554.)   If the contention of counsel should be upheld, the consequence would be that the legislature would be stripped of all power to alter or repeal any portion of the common law relating to accidental injuries or the death of one person by the negligence [6]   of another.   It is true the legislature cannot destroy vested rights.   Where an injury has already occurred for which the injured person has a right of action, the legislature cannot deny him a remedy.   But at this late day it cannot be contro- [7]   verted that the remedies recognized by the common law in this class of cases, together with all rights of action to arise

in future may be altered or abolished to the extent of destroying actions for injuries or death arising from negligent accident, so long as there is no impairment of rights already accrued. This necessarily follows from the proposition, well established by the courts everywhere, that no one has a vested right in any rule of the common-law. The technical defenses recognized by it in this class of cases, *viz.*, contributory negligence, assumption of risk, *etc.*, may be abolished or modified without transcending any constitutional guaranty. (*Middleton* v. *Texas Power & L. Co., supra; Mountain Timber Co.* v. *State of Washington, supra; Cunningham* v. *Northwestern Imp. Co., supra; State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 37 L. R. A. (n. s.) 466, 117 Pac. 1101; *New York Cent. Ry. Co.* v. *White,* 243 U. S. 188, Ann. Cas. 1917D, 629, L. R. A. 1917D, 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247; *Borgnis* v. *Falk Co.,* 147 Wis. 327, 347, 37 L. R. A. (n. s.) 489, 133 N. W. 209; *Sexton* v. *Newark Dist. Tel. Co.,* 84 N. J. L. 85, 86 Atl. 451.) This being so, there is no reason why technical rights of action arising out of the negligence of the employer may not be abolished by the legislature in the same way. And so it is held by the courts of those states which have enacted compensation [8] laws made compulsory, as in new York and Washington. If this is so, for a much stronger reason may it be asserted that there can be no objection to a compensation law which becomes binding upon the employer and employee at their election, but not otherwise. By way of inducement to the employer to accept the Act, it is provided that if he refrains, the technical common-law defenses shall not be available to him. As an inducement to the employee, his guaranty of compensation for any injury arising out of his employment becomes absolute, whereas, if he refuses to accept, he still has his action at law subject to all the common-law defenses. The employer cannot object because he has by his affirmative act elected to waive all objections to the extent of his liability and his obligation to make compensation. The employee cannot thereafter object if he fails to give the required notice of his refusal to accept

the conditions imposed. The difference in the modes by which they may indicate their election is not objectionable on the constitutional ground that it discriminates against either employer or employee. The former is not in this case making any com-
[9] plaint; the latter cannot complain because it was competent for him to waive the advantage of any provision of law which was intended solely for his benefit, so long as the waiver did not violate public policy. (Rev. Codes, sec. 6181; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469.) He may waive his right to a jury trial in the manner provided by law (Rev. Codes, sec. 6762; *Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254). No one has ever questioned the power of the legislature to provide a means by which the parties to a controversy may waive a trial by a court and submit the matter to arbitrators selected by themselves, by whose award they are finally concluded in the absence of fraud, gross error, excess of power and the like. (Rev. Codes, sec. 7365 *et seq.; Solem* v. *Connecticut Fire Ins. Co.,* 41 Mont. 351, 109 Pac. 432.) Other illustrative cases might be cited. These, however, are sufficient to show that it is no objection to the legislation that the employee after his election to become subject to the Act is conclusively bound to accept such compensation as may be awarded to him under its provisions. Nor is it a valid objection to it that it provides for a different mode of election by the employee from that provided for the employer. This feature of the legislation has been frequently considered by the courts and has invariably been declared unobjectionable. The following cases are directly in point: *In re Opinion of the Justices,* 209 Mass. 607, 96 N. E. 308; *Young* v. *Duncan,* 218 Mass. 346, 106 N. E. 1; *Sayles* v. *Foley,* 38 R. I. 484, 96 Atl. 340; *Sexton* v. *Newark Dist. Tel. Co., supra; Borgnis* v. *Falk Co., supra; Hunter* v. *Colfax Consol. Coal Co.,* 175 Iowa, 245, Ann. Cas. 1917E, 803, L. R. A. 1917D, 15, 154 N. W. 1037, 157 N. W. 145; *Hawkins* v. *Bleakly,* 243 U. S. 210, Ann. Cas. 1917D, 637, 61 L. Ed. 678, 37 Sup. Ct. Rep. 255; *Mathison* v. *Minneapolis St. Ry. Co.,* 126

Minn. 286, L. R. A. 1916D, 412, 417, 148 N. W. 71; *Deibeikis* v. *Link-Belt Co.*, 261 Ill. 454, Ann. Cas. 1915A, 241, 104 N. E. 211; *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8, 153 N. W. 49.

The silence of the employee establishes a presumption that [10, 11] he elects to be subject to the Act. It is clearly within the province of the legislature to establish presumptions and rules relating to the burden of proof, and a statute establishing a presumption of this character is valid, so long as the presumption is not unreasonable and not conclusive of the rights of the parties. (*Bielenberg* v. *Montana Union Ry. Co.*, 8 Mont. 271, 2 L. R. A. 813, 20 Pac. 314; *Hawkins* v. *Bleakly*, and other cases cited *supra.*)

But counsel say that it is not competent for a party to waive [12] the right to have his cause of action determined by a court before the cause of action arises. This court has expressly held under our statute (Rev. Codes, sec. 6181) that a party may waive in advance the advantage of the statute of limitations because it was intended solely for his benefit (*Parchen* v. *Chessman, supra*). If this is true, there seems to be no compelling reason why under the express authority of the legislature he may not at his option waive in advance the advantage of any remedy established solely for his benefit which the legislature itself may abolish, especially when it has provided a substitute remedy which renders his right to relief absolute.

It is argued that the Act is invalid in that it constitutes the [13] Industrial Accident Board a court, whereas the whole judicial power of the state is vested in the courts enumerated in section 1 of Article VIII of the Constitution. Several of its provisions are cited as evidencing the fact that the functions of this body are judicial. The fallacy of this contention is fully demonstrated by the case of *Cunningham* v. *Northwestern Imp. Co., supra*. That case is decisive of counsel's contention. It is true that many of the functions exercised by the board are judicial in character; but that it is not vested with judicial

power in the sense in which that expression is used in the Constitution becomes clear upon a moment's consideration. As [14] used in the Constitution, the expression "judicial power" means "the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." (Miller on the Constitution, 314.) This power the board does not possess. It was created as a purely administrative body. It may hear evidence to enable it to make an award in a particular case, and to that end may call witnesses; but it is without power to render an enforceable judgment and its determinations and awards are not enforceable by execution or by other process until a judgment has been entered thereon on appeal to a regularly constituted court. (*Mackin* v. *Detroit-Timkin Axle Co., supra.*) In this case, after considering the Michigan Act, the court said :· "We conclude that the Industrial Accident Board is a ministerial and administrative body with incidental *quasi-*judicial powers, exercised by consent of those electing to be governed by the Act, not vested with powers or duties in violation of constitutional limitations." The same view is announced in the following cases: *Hunter* v. *Colfax C. Coal Co., supra; Borgnis* v. *Falk Co., supra; Deibeikis* v. *Link-Belt Co., supra; Middleton* v. *Texas Power & L. Co., supra; Case of Pigeon* (*Pigeon* v. *Employers' L. Assur. Corp.*), 216 Mass. 51, Ann. Cas. 1915A, 737, 102 N. E. 932; *Greene* v. *Caldwell,* 170 Ky. 571, Ann. Cas. 1918A, 604, 186 S. W. 648.

It may be conceded for present purposes that some of the powers vested in the board are such as appertain exclusively to courts; for illustration, the power conferred by sections [15] 18(d) and 18(f) to punish for contempt. Of this, however, the plaintiff cannot complain, as counsel for defendants point out in their brief, for two reasons: In the first place, plaintiff is not about to be tried by the board for a contempt, nor has he been convicted by it. Hence he is in no position to assail these provisions of the Act on constitutional grounds. In [16] the second place, though these provisions are assumed to

be invalid, this assumption does not require the conclusion that any other provision is invalid. Section 24(b) declares: "If any section, subsection, subdivision, sentence, clause, paragraph or phrase of this Act is for any reason held to be unconstitutional or void, such decision shall not affect the validity of the remaining portions of this Act, so long as sufficient remains of the Act to render the same operative and reasonably effective for carrying out the main purpose and intention of the legislature in enacting the same as such purpose and intention may be disclosed by the Act." An examination of the Act in its entirety will disclose that even though the provisions referred to by counsel are eliminated entirely, there is still enough left to accomplish all the purposes for which the legislation was enacted. The district court of the county in which the board happens to be sitting at the time an appeal is taken, which is elsewhere provided for in the Act, has full power to compel the attendance of witnesses and punish them for disregard of subpoenas issued by the board.

The next contention made by counsel is that the board is an [17] unlawful body because the state auditor, one member of it, holds two offices. By this we presume counsel mean that because the auditor is made a member of the board and is required to execute a bond to guarantee the faithful performance of his duties, this constitutes him a public officer, in a capacity other than as state auditor. A complete answer to this contention is found in section 1 of Article VII of the Constitution. This section enumerates the state executive officers. It then provides that they shall perform such duties as are prescribed in the Constitution and by the laws of the state. It is not necessary to refer to the constitutional duties enumerated appertaining to the auditor's office. The only limitation imposed upon the legislature in imposing duties upon the auditor is found in section 1 of Article IV. This prohibits the imposition of duties upon him that appertain to the legislative or judicial departments of the government. So long as

this limitation is not violated, the legislature is at liberty to impose any governmental duty upon this officer.

The other contentions made by counsel are: That the Act denies a jury trial, and that it violates the clause of the Fourteenth Amendment to the Constitution of the United States guaranteeing to the citizen the equal protection of the laws. What we have said above in discussing the other questions heretofore determined, disposes of these contentions.

The judgment of the district court is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE COOPER concur.