MR. JUSTICE WEBER
concurs and dissents as follows:
I concur in the holding of the majority that section 2-9-105, MCA, creates immunity from punitive damages assessments for governmental entities. I dissent from the remainder of the majority holding.
The majority concludes that Article II, Section 16 of the *374 Montana Constitution guarantees that all persons have a speedy remedy for every injury. A review of the history of this constitutional provision, along with the interpretations of this Court, raises serious challenges to that conclusion.
Article III, Section 6 of the 1889 Montana Constitution stated:
“Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property, or character; and that right and justice shall be administered without sale, denial, or delay.”
Article II, Section 16 of the 1972 Montana Constitution (“Section 16”) used the same wording regarding courts of justice and speedy remedy, placing a period following the word “character.” The 1972 Constitution then inserted a new sentence providing that no person should be deprived of full legal redress for injury incurred in employment with certain exceptions in connection with Workmen’s Compensation, which is not applicable. The last sentence of the provision is identical to the final clause in the 1889 paragraph regarding the administration of justice.
A review of the 1972 Constitutional Convention proceedings shows that the only stated intent to broaden or change the 1889 Constitutional provision concerned the question on Workmen’s Compensation. We must conclude that the 1972 Convention did not intend to change the existing constitutional provision with regard to courts of justice and speedy remedy.
Initially the decisions of this Court were consistent in the analysis of “Section 16” and its constitutional predecessor. In Shea v. North-Butte Mining Co. (1919), 55 Mont. 522, 179 P. 499, the plaintiff miner sought recovery for personal injury alleged to have been suffered through the negligence of the defendants in the course of plaintiffs employment as a miner. The claim of plaintiff in Shea is directly comparable to the present case. Plaintiff contended that the limited right of recovery through the Industrial Accident Board deprived him of access to the courts as guaranteed under the *375 Constitution. This Court stated the contention of the plaintiff as follows:
“[W]e gather from the brief of counsel that their objection is that, though the Act is elective, it in effect closes access to the courts by the injured employee and compels him to seek relief, if he can obtain any at all, through the Industrial Accident Board. In other words, since the section declares in expressed terms that there shall be a judicial remedy for every wrong suffered by one person at the hands of another, it is beyond the power of the legislature to provide any other remedy, though such other remedy is entirely optional.” Shea, 55 Mont. at 530, 179 P. at 501.
In response to this contention, the Court then reached a conclusion directly contrary to the holding of the majority in the present case. This Court stated:
“But counsel are in error in supposing that for this reason the Compensation Act is repugnant to the section of the Constitution quoted. Their contention is based upon a misconception of the scope of the guaranty therein contained. A reading of the section discloses that it is addressed exclusively to the courts. The courts are its sole subject matter, and it relates directly to the duties of the judicial department of the government. It means no more nor less than that under the provisions of the Constitution and laws constituting them, the courts must be accessible to all persons alike, without discrimination, at the time or times and the place or places appointed for their sitting, and afford a speedy remedy for every wrong recognized by law as being remediable in a court. The term ‘injury’ as therein used, means such an injury as the law recognizes or declares to be actionable. Many of the state Constitutions contain similar provisions, and the courts, including our own, have held either expressly or impliedly that their meaning is that above stated, (cases cited) . . . [A]t this late day it cannot be controverted that the remedies recognized by the common law in this class of cases, together with all rights of action to arise in future may be altered or abolished to the extent of *376 destroying actions for injuries or death arising from negligent accident, so long as there is no impairment of rights already accrued. This necessarily follows from the proposition, well established by the courts everywhere, that no one has a vested right in any rule of the common-law.” Shea, 55 Mont. at 532-34, 179 P. at 502-03. (emphasis added).
The holding in Shea was restated in Reeves v. Ille Electric Company (1976), 170 Mont. 104, 551 P.2d 647. Plaintiff sought damages for the death of a student electrocuted in a whirlpool bath in the Montana State University Fieldhouse at Bozeman. The architect and the builder contended that plaintiff was barred from suit under an architects and builders statute, which limited actions for damages to commencement within ten years after completion of the improvement. Plaintiff contended that the statute was unconstitutional under “Section 16” because it denied the plaintiff access to the courts and a speedy remedy for injuries and damages. This Court quoted the above portions of the Shea opinion, as well as other provisions, then concluded:
“Assuming arguendo, that plaintiff would have a claim under common law, the legislature is not constitutionally prohibited from eliminating a common law right as it did in Shea and Stewart [Stewart v. Standard Publishing Co. (1936), 102 Mont. 43, 55 P.2d 694.] In Section 93-2619, the legislature did not interfere with any vested right of plaintiff, but simply cut off accrual of the right to sue after ten years.” 170 Mont. at 110-111, 551 P.2d at 651. (emphasis added).
In Reeves, this Court affirmed the judgment of dismissal in favor of the architect and the summary judgment in favor of the electrical contractor, thereby affirming the statement in Shea that the legislature may eliminate a remedy recognized by the common law, together with all rights of action for an injury or death, notwithstanding the constitutional provisions of “Section 16.”
This Court again considered the question in Linder v. *377 Smith (1981), Mont., 629 P.2d 1187, 38 St.Rep. 912, in which the plaintiff sought a determination of the constitutionality of the Montana Medical Malpractice Panel Act. The plaintiff contended that the effect of the Act was to deny him right of access to the courts in violation of “Section 16” of the Constitution. In holding against the plaintiff on this issue, this Court stated:
“The courts addressing this issue have noted that access to the courts is not an independent fundamental right, access is only given such a status when another fundamental right - such as the right to dissolve the marital relationship - is at issue, and no alternative forum exists in which to enforce that right. Boddie v. Connecticut (1971), 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113. In cases not involving a fundamental right, access may be hindered if there exists a rational basis for doing so. Woods [v. Holy Cross Hospital (5th Cir.1979), 571 F.2d 1164]; Paro [v. Longwood Hospital (Mass.1977), 373 Mass. 645, 369 N.E.2d 985]; Ortwein v. Schwab (1973), 410 U.S. 656, 93 St.Ct. 1172, 35 L.Ed.2d 572.” Linder, 629 P.2d at 1190, 38 St.Rep. at 915. (emphasis added).
Up to 1981, the holdings of this Court were consistent in the interpretation of the 1889 constitutional Article III, Section 6 and the 1972 constitutional Article II, Section 16. We would also note that by enactment of the original provisions of the 1889 Constitution in 1972, the Constitutional Convention is considered to have adopted the interpretations of those constitutional provisions by the Montana Supreme Court. A general rule is stated in 16 C.J.S. Constitutional Law § 35 (1956):
“Where a constitutional provision similar or identical to that contained in a prior constitution or statute, or in the constitution of another state, is adopted, it is presumed that such provision was adopted with the construction previously placed on it.”
No Montana case has addressed the question of a prior constitutional provision. With regard to the theory of statu *378 tory interpretation and approval of prior interpretations, 2A C. Sands, Sutherland Statutory Construction § 45.12 (4th ed. 1973), p. 37:
“Judicial interpretation of statutes is conditioned by various additional presumptions which the courts indulge on the basis of a belief in their essential reasonableness. Thus, legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, the rules of statutory construction, and judicial decisions that if a change occurs in legislative language a change was intended in legislative result, and that reenactment of a statute without change in its language indicates approval of interpretations rendered prior to the reenactment. On similar grounds, it is not presumed that the common law is changed by statutory enactment; and statutes in derogation of the common law are strictly construed.” (emphasis added).
This rule of statutory construction is applicable to the interpretation of the constitutional provisions of Montana. See State v. Cardwell (1980), Mont., 609 P.2d 1230, 1232, 37 St.Rep. 750, 751-752; Keller v. Smith (1976), 170 Mont. 399, 404, 553 P.2d 1002, 1006; School Dist. No. 12, Phillips County v. Hughes (1976), 170 Mont. 267, 552 P.2d 328, 332.
In Corrigan v. Janey (1981), Mont., 626 P.2d 838, 38 St.Rep. 545, which was decided two months prior to Linder v. Smith, we find a contradictory position to have been taken by this Court. In Corrigan, pertaining to the electrocution of a man in a bathtub, we reached the decision which is relied upon by the majority. After quoting “Section 16” with regard to speedy remedy, we (including the undersigned) stated:
“It would be patently unconstitutional to deny a tenant all causes of action for personal injuries or wrongful death arising out of the alleged negligent management of rental premises by a landlord. If this action were to be taken away, a substitute remedy would have to be provided. Arguably, the repair and deduct statute provides an alterna *379 tive remedy for damage to the leasehold interest. However, in no way can it be considered an alternative remedy for damages caused by personal injury or wrongful death.
"...
“In summary, we overrule Dier v. Mueller, [53 Mont. 288, 163 P. 466], supra, and hold that our Constitution requires that plaintiff have a form of redress for wrongful death and survival damages.” Corrigan, 626 P.2d at 840-841, 38 St.Rep. at 548-549.
Unfortunately, in Corrigan we failed to analyze any of the above-cited cases, and also failed to distinguish or overrule the same. In addition, we did not consider the effect of reenactment of “Section 16” in the 1972 Constitution. Unfortunately our constitutional statements in Corrigan were not supported, and we could have overruled Dier v. Mueller without a constitutional foundation. It now becomes particularly unfortunate when the unsupported holding of Corrigan is expanded to form the foundation for the present majority opinion.
Section 2-9-104, MCA, adopted in 1977, with a modification by amendment in 1979, has been found unconstitutional by the majority opinion. It is important to analyze the history and background of this section. It was enacted as a result of power given to the Legislature under Article II, Section 18 of the Montana Constitution. As originally adopted in 1972, Section 18 said only the following:
“The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property.”
The proceedings of the Constitutional Convention show an almost universal approval of total elimination of sovereign immunity. However, that viewpoint was expressly rejected by the vote of the people. An amendment was proposed by Senate Joint Resolution No. 64, laws of 1974, which was adopted by the people at the general election of November 5, 1974. The amendment added the following exception to Section 18:
*380 "... except as may be specifically provided by law by a 2/3 vote of each house of the legislature.”
The grant of power to the Legislature contained in that exception was made two years after the Constitutional Convention, and is the most recent expression contained in the Constitution of the will of the majority of the voters of Montana regarding sovereign immunity. Following this referendum vote, in 1977 the Legislature by a 2/3 vote of both houses adopted Section 2-9-104, MCA. In a similar manner, it amended that section in 1979. There must be a balancing of Sections 16 and 18, Article II of the Montana Constitution. “All constitutional provisions have equal dignity.” 16 C.J.S. Constitutional Law § 23. Unless Section 2-9-104, MCA violates federal constitutional provisions, I do not see how the majority can disregard Section 18 and conclude that “Section 16” grants remedies which unquestionably override the specific grant of legislative authority in Section 18.
The test to be applied to determine if equal protection has been given was recently enunciated in Matter of Estate of Merkel (1980), Mont., 618 P.2d 872, 874, 37 St.Rep. 1782, 1784:
“The legislature is empowered to classify persons for purposes of legislation, State v. Craig (1976), 169 Mont. 150, 156, 545 P.2d 649, 653, and in reviewing a statute, this Court presumes that the statute is constitutional. Great Falls Nat. Bk. v. McCormick (1968) 152 Mont. 319, 323, 448 P.2d 991, 993. Appellant admits that this classification does not involve a ‘fundamental right’ or a ‘suspect class,’ which would require a finding by this Court of a compelling state interest in order to uphold the class. State v. Jack (1975), 167 Mont. 456, 461, 539 P.2d 726, 729. Rather, this Court need only determine that the ‘classification [is] reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. . .’ State v. Craig, supra, 169 Mont. at 156, *381 545 P.2d at 653.
“The appellant has the burden of proving that the classification is arbitrary, State v. Jack, supra, 167 Mont. at 461, 539 P.2d at 729, a burden which appellant has not sustained here.”
In accordance with the constitutional provisions and interpretations of this Court as previously cited, I would hold that “Section 16” does not contain a grant of a fundamental right. As a result the plaintiff has the burden of proving that the classification is arbitrary. Plaintiff has not met that burden. In view of the provisions of Article II, Section 18 of the Montana Constitution, under which the Legislature was specifically granted the right to provide for sovereign immunity by a % vote of each house, I would reverse the District Court’s holding that Section 2-9-104, MCA, is unconstitutional. Examples of statutory limitations on damage awards which have withstood equal protection challenges are contained in the following: Sambs v. City of Brookfield (1980), 97 Wis.2d 356, 293 N.W.2d 504, cert. denied, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497; Estate of Cargill v. City of Rochester (1979), 119 N.H. 661, 406 A.2d 704, appeal dism’d. 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754; State v. Silva, (1971) 86 Nev. 911, 478 P.2d 591; Siefert v. Standard Paving Co. (1976) 64 Ill.2d 109, 355 N.E.2d 537; and Johnson v. St. Vincent Hospital, Inc. (1980) Ind., 404 N.E.2d 585. Based upon the rules described in the majority opinion, I conclude that the right to bring the present civil action for personal injuries is not a fundamental right and that the rational basis test therefore should be applied. I would find that there is a rational basis for the distinction between non-economic damages and economic damages as contained in section 2-9-104, MCA.
Further, even if we accept the majority conclusion that there has been a denial of equal protection under the United States Constitution, a different conclusion should be reached. The strongest argument under the majority theory is the claim of discrimination between those who suffer eco *382 nomic damages and those who suffer non-economic damages. Having reached the conclusion that the classification between those two types of damages justifies a declaration of unconstitutionality under the equal protection clause, the majority could still give effect to the intent of the Legislature. This could be done without a declaration that the entire section is unconstitutional. This Court has previously held that if a part of a statute is invalid but severable, the portion which is constitutional may stand while the unconstitutional part is stricken. In Montana Auto. Ass’n v. Greely (1981), Mont., 632 P.2d 300, 311, 38 St.Rep. 1174, 1187, this Court stated:
“If an invalid part of a statute is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. State v. Fire Department Relief Association, Etc. (1960), 138 Mont. 172, 178, 355 P.2d 670, 673. A statute ‘is not destroyed in toto because of an improper provision, unless such provision is necessary to the integrity of the statute or was the inducement to its enactment.’ Hill v. Rae (1916), 52 Mont. 378, 389-90, 158 P. 826, 831. If, when an unconstitutional portion of an act is eliminated, the remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained. Gullickson v. Mitchell (1942), 113 Mont. 359, 375, 126 P.2d 1106, 1114.”
Applying this principle to section 2-9-104, MCA, we find that it is possible to eliminate from section 2-9-104, MCA, those portions which are lined through, leaving the balance of the section capable of execution in accordance with the apparent legislative intent. The following sets out such changes which could be made in section 2-9-104, MCA:
“(1) Neither the state, a county, municipality, taxing district, nor any other political subdivision of the state is liable in tort action for: (a) Non-economie- damages; or(b-) Economic damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of *383 $300,000 for each claimant and $1 million for each occurrence.
(2) The legislature or the governing body of a county, municipality, taxing district, or other political subdivision of the state may, in its sole discretion, authorize payments for non-eeonomic damages or- economic damages in excess of the sum authorized in subsection (1)(b) of this section, or both, upon petition of plaintiff following a final judgment. No insurer is liable for such non-economic -damages-or excess economic damages unless such insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of the limitations stated in this section, or specifically agrees to provide coverage for non-economic-damages; in which case the insurer may not claim the benefits of the limitations specifically waived.”
If we were to eliminate the portions of the section which are lined through, the remaining portion contains the essential elements of the section, that being that the State or other political subdivision is not liable in tort action for damages in excess of.$300,000 for each claimant and one million dollars for each occurrence, with the further provisions as to legislative authorization of payments or payments under insurance coverage which may exceed the previous limits. It seems to me that we can properly conclude that this is the action which the Legislature would have taken had it been aware of a constitutional limitation on its right to exclude non-economic damages. Certainly such an interpretation recognizes legislative intent as contrasted to a declaration of unconstitutionality for the entire section. In addition such an interpretation recognizes the right on the part of the people of Montana to allow some degree of sovereign immunity as contrasted to the reinstatement of a ban on sovereign immunity.
MR. CHIEF JUSTICE HASWELL concurs.