KELSEY, APPELLANT, *v.* SCHOOL DISTRICT No. 25, RESPONDENT.

(No. 6,421.)

(Submitted February 25, 1929. Decided April 4, 1929.)

[276 Pac. 26.]

454

*Mr. George W. Farr,* for Appellant, submitted a brief, and argued the cause orally.

456

*Mr. Rudolph Nelstead* and *Mr. H. E. Herrick,* for Respondent, submitted a brief; *Mr. Nelstead* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff brought this action against the defendant school district for breach of contract. The court found for the defendant and plaintiff appealed.

Plaintiff, holder of a "legal teacher's certificate," by contract in writing agreed to teach defendant's school for nine months commencing September 2, 1924, and taught until the latter part of December when she was notified by the board that she was dismissed. She appealed to the county superintendent of schools and her appeal was denied. She did not appeal to the superintendent of public instruction.

The legislature has conferred upon school boards comprehensive powers and duties as is seen by a reading of section 1015, Revised Codes 1921. Every school board has power: "2. To employ or discharge teachers, mechanics, or laborers, and to fix and order paid their wages; provided, that no teacher shall be employed except under resolution agreed to by a majority of the board of trustees at a special or regular meeting; nor unless such teacher be the holder of a legal teacher's certificate in full force and effect. All contracts of employment of teachers, authorized by proper resolution of a board of trustees, shall be in writing and executed in dupli-

cate by the chairman and clerk of the board, for the district and by the teacher. * * * 5. To enforce the rules and regulations of the superintendent of public instruction for the government of schools, pupils, and teachers and to enforce the course of study * * * . 14. To require teachers to conform to the law."

A wide discretion is necessarily reposed in the trustees who compose the board. They are elected by popular vote, and, presumably, are chosen by reason of their standing in the community, sound judgment, and their interest in the educational development of the young generation which is so soon to take the place of the old.

In certain instances the board may dismiss a teacher before the expiration of the contract. In case of the dismissal of a teacher before the expiration of her written contract, for alleged immorality, unfitness, incompetence, or violation of rules, she may appeal to the county superintendent; "and if the superintendent decides that the removal was made without good cause, the teacher so removed must be reinstated, and shall be entitled to compensation for the time lost during the pending of the appeal." (Sec. 1085, Rev. Codes 1921.) This provision of the statute became a condition of the contract as effectively as if expressly written therein. (*Home State Bank* v. *Swartz*, 72 Mont. 425, 234 Pac. 281; *State* v. *Rosman*, ante, p. 207, 274 Pac. 850.)

It is made the duty of the county superintendent to "decide all matters in controversy arising in his county in the administration of the school law or appealed to him from the decision of school officers or boards. An appeal may be taken from the decision of the county superintendent, in which case a full written statement of the facts, together with the testimony and his decision in the case, shall be certified to the state superintendent for his decision in the matter, which decision shall be final, subject to adjudication or the proper legal remedies in the state courts." (Sec. 966, Rev. Codes 1921.) It is made the duty of the superintendent of public instruction to "decide all appeals from the decision of the county super-

intendent, and may for such decision require affidavits, verified statements, or sworn testimony as to the facts in issue." (Id., 943.)

From the action of the board in discharging the plaintiff she had a plain, speedy and adequate remedy—by appeal first to the county superintendent, and having been unsuccessful in that, to the superintendent of public instruction. (*Peterson* v. *School Board,* 73 Mont. 442, 236 Pac. 670; *Kinzer* v. *Directors of Independent School Teachers of Marion,* 129 Iowa, 441, 6 Ann. Cas. 996, 3 L. R. A. (n. s.) 496, 105 N. W. 686.) It is unquestionably the policy of this state, as declared by the legislative assembly, that ordinary school controversies shall be adjusted by those who are specially entrusted with that duty. It is not the policy to encourage resort to the courts in such matters. So long as the school officers act legally and within the power expressly conferred upon them the courts will not interfere. (*State ex rel. School District* v. *Trumper,* 69 Mont. 468, 222 Pac. 1064.)

In this case the board of school trustees dismissed the plaintiff, deeming her "not competent to teach." They had in mind, of course, their particular school. A teacher might be wholly unable to surmount the situation confronting her in one school, while able to teach in another with success. She would be deemed not competent to teach the first school, but competent to teach the second. The law does not intend that a teacher must be retained simply because she has a written contract to teach. If she is not competent to teach, injury to the pupils will result, and schools are established and maintained for the education of the pupils. Someone must judge whether the school is functioning properly. Discretion must be reposed somewhere, and here the law reposes it first in the trustees, and next in the supervising officers elected for their special knowledge of schools and school problems. "That the courts will not interfere with the discretion of school officials in matters which the law has conferred to their judgment, unless there is a clear abuse of that discretion, or arbitrary or unlawful action, seems to be the unanimous

holding of the authorities. (*State ex rel. Ingersoll* v. *Clapp,* 81 Mont. 200, 263 Pac. 433.) "It is for the board of education, within the reasonable exercise of its power and discretion, to say what is best for the successful management and conduct of the schools, and not for the courts." (*Wilson* v. *Board of Education,* 233 Ill. 464, 13 Ann. Cas. 330, 15 L. R. A. (n. s.) 1136, 84 N. E. 697.)

In respect of employing and discharging teachers we say, as was said in *Peterson* v. *School Board,* supra: "In this, and all like questions properly coming before them, the members of the board act in a quasi-judicial capacity, and with the proper exercise of their discretion and judgment, the courts will not interfere." The record here does not show an abuse of discretion on part of any of the school authorities.

The upshot, then, is first, that the plaintiff had a plain, speedy and adequate remedy by appeal to the school officers, in whom the law reposes, by reason of their special fitness to decide, the duty of settling the controversy, which remedy the plaintiff did not exhaust; second, no reason is shown why the court should be called upon to interpose its power.

This case is an illustration of "the law's delays." Complaint was filed November 20, 1925, demurrer filed December 28, 1925, amended answer December 2, 1926, reply December 16, 1927. The case came on for trial December 17, 1927. The court, after hearing the testimony, took the matter under advisement until January 30, 1928, when it ordered judgment for defendant, which was entered on the next day. The last brief was filed in this court on March 17, 1929. The entire record embraces less than sixty pages, and the case is comparatively simple. It seems to us apposite to refer to the adage, "Procrastination is the thief of time."

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.