No. 13052

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

_____

BOARD OF PUBLIC EDUCATION OF THE
STATE OF MONTANA,

Plaintiff,

-vs-

THOMAS L. JUDGE, Governor of the
State of Montana,

Defendant.

_____

ORIGINAL PROCEEDING:

For Plaintiff:

Garlington, Lohn and Robinson, Missoula, Montana
Sherman V. Lohn argued, Missoula, Montana

For Defendant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Lon Maxwell, Assistant Attorney General, argued,
Helena, Montana
Cannon and Garrity, Helena, Montana
Donald Garrity argued, Helena, Montana
Patrick E. Melby, Helena, Montana

_____

Submitted: June 16, 1975

Decided: JUL 3 - 1975

Filed: JUL 3 - 1975

_Thomas J. Kearney_
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding seeking a declaratory judgment as to the constitutionality of an enactment, Chapter 434, of the Forty-Fourth Legislative Assembly effective on July 1, 1975. This Court permitted the filing of a complaint by the Board of Public Education against the Governor of the State. An answer was filed, briefs filed, and oral argument had. Defendant admitted the necessity for this original proceeding, but denied the challenged legislative act was unconstitutional.

By the complaint and answer, three issues are presented:

(1) Do the provisions of Chapter 434, Laws of 1975, which designate the State Board of Education as the State Board of Vocational Education violate the provisions of Article X, Section 9, 1972 Montana Constitution?

(2) If the first issue is answered in the affirmative, are the provisions of Chapter 434, which designate a new executive officer for vocational education, valid and severable from the invalid portions of the Act?

(3) If all or any portion of Chapter 434 is unconstitutional, is the appropriation for vocational education contained in H.B. 286 inoperative?

Article X, Section 9, 1972 Montana Constitution, establishes three distinct boards concerned with state education. The pertinent provisions are:

> "(1) There is a state board of education composed of the board of regents of higher education and the board of public education. It is responsible for long-range planning, and for coordinating and evaluating policies and programs for the state's educational systems. * * *

> "(2) (a) The government and control of the Montana university system is vested in a board of regents of higher education which shall have full power, responsibility, and authority to supervise, coordinate, manage and control the Montana university

system and shall supervise and coordinate other
public educational institutions assigned by law.

" * * *

"(3) (a) There is a board of public education to
exercise general supervision over the public school
system and such other public educational institu-
tions as may be assigned by law. Other duties of
the board shall be provided by law."

Prior to enactment of Chapter 434, the general supervision

and control of vocational education was vested in the Board of

Public Education under sections 75-5617(1) and 75-7702, R.C.M.

1947. In enacting Chapter 434, the legislature attempted to take

this responsibility away from the Board of Public Education by

transferring it to the State Board of Education. It accomplished

this by designating the State Board of Education, the board estab-

lished by Article X, Section 9(1), 1972 Montana Constitution, as

the State Board of Vocational Education (Chap. 434, section

75-7702, R.C.M. 1947) and requiring it to adopt policies:

" * * * to effect the orderly development of a
system of vocational education that is adaptable
to changing needs, controlled to prevent unneces-
sary duplication, co-ordinated with federal guide-
lines and requirements for vocational education,
and funded to ensure growth and quality programming."

The law then provides specific areas which such policies

must cover, including standards for courses, instructor qualifi-

cations, criteria for courses, apportionment of appropriated moneys

both state and federal, and authorizes the adoption of any other

policies not inconsistent with law and which are deemed necessary

for the proper operation of the system. Chapter 434, section

75-7702(1).

Under Chapter 434, the governor is required to appoint

from the State Board of Education, designated the Vocational Ed-

ucation Board, five persons, three from the Board of Public Edu-

cation and two from the Board of Regents, designating this board

as an administrative committee, which is to have the responsibility

- 2 -

for the administration of the policies adopted. Section 75-7702. This committee is to select an executive officer who " * * * shall administer for the administrative committee all state and federal laws related to vocational education.", in addition to other prescribed duties. Section 75-7703, R.C.M. 1947.

Chapter 434 also provides for the assignment of certain powers and duties provided by law to the Board of Vocational Education. Section 75-5617, R.C.M. 1947.

In effect, Chapter 434 transfers supervision and control of vocational education from the plaintiff here to the State Board of Education, and from that Board to an administrative committee and an executive officer.

Chapter 434, Laws 1975, consists of 17 sections; the first 16 amend various existing statutes. Section 17 provides a severability clause.

The 1975 Legislature also enacted House Bill 286, "AN ACT APPROPRIATING MONEYS TO VARIOUS STATE AGENCIES FOR THE BIENNIUM ENDING JUNE 30, 1977." As originally passed by the House of Representatives, House Bill 286, pp. 16, 17, contained the following appropriations to the Superintendent of Public Instruction:

> "From the general fund:
> Five vocational technical centers        3,616,319    4,245,790
> Vocational secondary & post-
>   secondary education                                 679,830      742,415
>                          * * *
> From the earmarked revenue fund
>                          * * *
> 02900 Vo-tech centers tuition:
> ERA                                                      123,585      144,734"

This language was deleted from the bill by the Senate Committee on Finance and Claims, which inserted the following language at pp. 14, 15 of the enrolled bill:

> "If House Bill 566, forty-fourth legislature, be-
> comes law, the following funds are transferred from
> the Superintendent of Public Instruction's office
> to the State Board of Vocational Education.

- 3 -

```
"STATE BOARD OF VOCATIONAL EDUCATION
    Educational services program
        From the general fund              165,805    175,217
        From the federal and
        private revenue fund
        vocational education
        account                            360,709    393,671
    Distribution of public
        funds program
        From the general fund

            Five vocational
            technical centers          3,616,319  4,245,790

            Vocational secondary
            and postsecondary
            education                      679,830    742,415

    From the earmarked revenue
        fund
        02900 Vo-Tech
        centers tuition ERA            123,585    144,734

                Total               4,946,248  5,701,827"
```

We shall not review here the general principles to be followed in considering constitutionality of an enactment, but will refer to recent cases. Noll v. City of Bozeman, _____Mont. _____, 534 P.2d 880, 32 St.Rep. 415; State ex rel. Cashmore v. Anderson, 160 Mont. 175, 500 P.2d 921.

We now turn to the history of the law which Chapter 434 seeks to amend.

In the 1889 Montana Constitution Article XI, Sec. 11, only one board was established to deal with state educational institutions, it provided:

"The general control and supervision of the state university and the various other state educational institutions shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law. * * *."

Prior to the adoption of the 1972 Montana Constitution, the state legislature vested control and supervision of the state's vocational education system in the Board of Education. Section 75-7702, R.C.M. 1947.

This then was the situation when the Constitutional

Convention convened--one Board of Education with full responsibility under the Constitution for all state educational systems, including vocational education.

Article X, Section 9, 1972 Montana Constitution, clearly sets up three boards:

(1) The Board of Regents of higher education, to supervise the Montana university system; with the reservation that other duties could be prescribed by law.

(2) The Board of Public Education, to exercise general supervision over the public school system, with the reservation that other duties could be prescribed by law.

(3) The State Board of Education, consisting of the first two Boards. The provision carefully delineates that "It is responsible for long-range planning, and for coordinating and evaluating policies and programs for the state's educational systems."

The debate on Article X, Section 9, in the 1972 Constitutional Convention centered around the issue of whether there should be a single board as in the 1889 Constitution, or two boards, one for the university system and one for the public school system. This is clear from a reading of the transcript of proceedings of the Constitutional Convention, Vol. 8, beginning at page 6266. The concept of two boards prevailed. The third board, the State Board of Education, made up of the other two, was originally considered from the standpoint of a unified budget and was only to review matters of mutual interest. Thereafter, the language for long-range planning, coordinating and evaluating was added.

In considering the responsibilities of the third board, or the State Board of Education, it was proposed that the word "administrations" be inserted so that the Board would have responsibility "for coordinating and evaluating policies, programs and administrations for the state's educational system."

This was specifically rejected with the fear being expressed

that such a provision might allow the third board to override the decisions of the other two. It was clearly the intent of the Convention to maintain a two board system with the third board to have no executive or administrative powers other than those expressed in planning, coordinating and evaluating.

In the convention proceedings, vocational education and vo-tech are referred to many times in the discussion of Article X, Section 9. The terms were used interchangeably. The fact is, vocational education is included in the curriculum of nearly every high school in Montana while vo-tech generally refers to the separate centers located in major Montana communities. There was no question but that it was intended that vocational education was to be a responsibility of the Board of Public Education. As an example, in Volume 8, p. 6340 of the transcript, this exchange occurs:

> "DELEGATE DAHOOD: * * * tell us under which board--
> the board of public education or the board of
> regents--you would place the vocational education
> program of Montana?
>
> "DELEGATE CHAMPOUX: The board of public educa-
> tion, * * *".

Moreover, the report of the Education and Public Lands Committee ordered filed at p. 2180, Volume 4 of the Transcript of Proceedings, contains at page 30 this explanation:

> "Under existing law, vocational-technical centers
> will remain within the public school system and
> thus under the jurisdiction of the Board of Public
> Education. Witnesses from the 'Vo-Tech' field
> assured the Committee that this was their prefer-
> ence at the present time. However, the language
> of this section and of the new section 11 allows
> sufficient flexibility so that, should conditions
> change, these institutions could be accommodated
> in the system of higher education."

The clear contemplation of this report is that the responsibility for vocational education could be transferred to the Board of Regents from the Board of Public Education, but there is no indication it could be transferred to the Board of Education.

- 6 -

It should be noted that in Article X, Section 9(2)(a),
the framers of the 1972 Constitution, after providing that the
Board of Regents was to have general supervision of the University
system, added these words:

> " * * * and shall supervise and coordinate
> other public educational institutions assigned
> by law."

Likewise in Article X, Section 9(3)(a), after providing that
the Board of Public Education should exercise general supervision
over the public school system, these words were added:

> " * * * and such other public educational insti-
> tutions as may be assigned by law.  Other duties
> of the board shall be provided by law."

It is obvious the framers of the Constitution feared a
super board and desired that the authority of the State Board of
Education be limited to long-range planning, coordination and
evaluation.

Now, examining Chapter 434, it is clear that it flatly
provides for "ADMINISTERING VOCATIONAL EDUCATION" as expressed in
the title of the Act.  This is contrary to the expressed will
of the framers of the 1972 Constitution.  Chapter 434, Laws of
1975, is unconstitutional.

The second issue is whether the Act is severable.  That
is, defendant argues that even if the delegation of power to the
state board of education and the administrative committee is
invalid, the separately operative remainder of the Act, particularly
Section 2  is severable and thus valid.  Defendant urges that if
the administrative committee is invalid, then the power of appoint-
ing the executive officer for vocational education would fall to
the governor under Article VI, Section 8, 1972 Montana Consti-
tution, which provides for appointment by the governor, if not
otherwise provided for.  Defendant urges that Section 2 of the
Act (the amendment to section 75-7703) and such other portions of

the Act that relate to the executive officer for vocational education are severable and should be upheld. However, from what we have set forth heretofore, it is clear that if the State Board of Education does not have the powers contemplated by the Act, all other provisions are dependent thereon. The Act then must fall.

House Bill No. 286 is the general appropriations bill of the legislature for the biennium ending June 30, 1977. Section 12 sets forth the general headings of various departments and the sums appropriated. Under the heading "SUPERINTENDENT OF PUBLIC INSTRUCTION'S OFFICE" this language appears:

> "If House Bill 566, forty-fourth legislature, becomes law, the following funds are transferred from the Superintendent of Public Instruction's office to the State Board of Vocational Education."

> "STATE BOARD OF VOCATIONAL EDUCATION"
> [The appropriations are then listed].

It is obvious the funds are appropriated to the Superintendent of Public Instruction. The transfer is plainly contingent on the Act, Chapter 434, becoming effective. It has not become effective because of our holding here. Accordingly, the funds are not transferred and remain with the Superintendent's office.

To summarize, we hold Chapter 434, Laws of 1975, an unconstitutional law. The provisions are not severable and the provisions for a new executive officer are invalid. The appropriation contained in House Bill 286 to the Superintendent of Public Instruction is operative. This opinion shall constitute a declaratory judgment.

_____
                Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices          - 8 -