No. 13078

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

SCHOOL DISTRICT No. 12,
PHILLIPS COUNTY, MONTANA,

                              Plaintiff and Appellant,

     -vs-

DOLORES HUGHES, County Superintendent of
Schools of Phillips County, Montana, and
DOLORES COLBURG, Superintendent of Public
Instruction of the State of Montana,

                              Defendants and Respondents,

     and

MONTANA EDUCATION ASSOCIATION and
V. M. JOHNSON,

                              Intervenors.

Appeal from:  District Court of the First Judicial District,
              Honorable R. J. Nelson, Judge presiding.

Counsel of Record:

     For Appellant:

          Smith, Smith and Sewell, Helena, Montana
          Chadwick H. Smith argued, Helena, Montana

     For Respondents:

          Carroll Blend argued, Great Falls, Montana
          Hon. Robert L. Woodahl, Attorney General, Helena,
           Montana
          Donald D. Cole, County Attorney, Malta, Montana

     For Intervenors:

          Hilley and Loring, Great Falls, Montana
          Emilie Loring argued, Great Falls, Montana

                         Submitted:  May 28, 1976

                          Decided:  JUL 2 1 1976

Filed:  JUL 2 1 1976

*Thomas J. Kearney*
                              Clerk

PER CURIAM:

This appeal is from amended findings of fact, con-
clusions of law and judgment of the district court, Lewis
and Clark County, wherein the district court ruled sections
75-6107, 75-5811 and 75-5709, R.C.M. 1947 are "not uncon-
stitutional when construed in accordance with the preceding
findings of fact."

Two issues are presented for review:

1. Whether the last two sentences of section 75-6107
and all of sections 75-5811 and 75-5709 are in violation of
Article X, Section 8, 1972 Montana Constitution?

2. Whether the same statutes violate Article VII,
Section 4(2), 1972 Montana Constitution?

The fact situation is simple and undisputed. A written
stipulation states:

> "That A. W. Unterseher is Superintendent of the
> public school district situated at Saco, Phillips
> County in the State of Montana, and that he is
> the executive officer of the Board of Trustees
> of said school district; that said school district
> hired V.M. (Vic) Johnson for the school year
> 1974-1975 as a school instructor for vocational
> agriculture as a non-tenure teacher.
>
> "That said school district notified Mr. V. M.
> (Vic) Johnson, in writing, that his employment
> was terminated on November 7, 1974, dismissing him
> on incompetency and unfitness; that Mr. V. M.
> (Vic) Johnson discontinued teaching on November 7,
> 1974, and has not taught for the plaintiff school
> district since.
>
> "Mr. V. M. (Vic) Johnson appealed the decision of
> the plaintiff school district to the Superintendent
> of Schools of Phillips County and said County Super-
> intendent of Schools issued notice of hearing the
> appeal, set for November 15 and thereafter gave
> further notice continuing the hearing to December
> 19, 1974; that said hearing was enjoined by the
> temporary injunction of this Court before it was
> held."

Appellant school board argues that under the 1972
Montana Constitution the statutory law providing for hearings
by the county and state superintendents in cases where teachers'

contracts are allegedly terminated illegally has been done away with by the 1972 Constitutional provisions of direct appeal to the district court under Article VII, Section 4(2), 1972 Montana Constitution.

Article X, Section 8, 1972 Montana Constitution provides:

> "School District Trustees. The supervision and control of schools in each school district shall be vested in a board of trustees to be elected as provided by law."

Article VII, Section 4(2), 1972 Montana Constitution provides:

> "(2) The district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law. The legislature may provide for direct review by the district court of decisions of administrative agencies."

Statutory provisions concerned with the dismissal of teachers under contract are sections 75-6107, 75-5811 and 75-5709, R.C.M. 1947, which provide:

> "75-6107. Dismissal of teacher under contract. The trustees of any district may dismiss a teacher before the expiration of his employment contract for immorality, unfitness, incompetence, or violation of the adopted policies of such trustees. Any teacher who has been dismissed may in writing within ten (10) days appeal such dismissal to the county superintendent; following such appeal a hearing shall be held within ten (10) days. If the county superintendent, after a hearing, determines that the dismissal by the trustees was made without good cause, he shall order the trustees to reinstate such teacher and to compensate such teacher at his contract amount for the time lost during the pending of the appeal." (Emphasis added.) (The emphasized portion of this statute is the portion challenged.)

> "75-5811. Controversy appeals and hearings. The county superintendent shall hear and decide all matters of controversy arising in his county as a result of decisions of the trustees of a district in the county. When appeals are made under section 75-6104 relating to the termination of services of a tenure teacher or under section 75-6107 relating to the dismissal of a teacher under contract, the county superintendent may appoint a qualified attorney at law to act as a

legal adviser who shall assist the superintendent in preparing findings of fact and conclusions of law. Subsequently, either the teacher or trustees may appeal to the superintendent of public instruction under the provisions for appeal of controversies in this title. Furthermore, he shall hear and decide all controversies arising under:

"(1) section 75-6315 or 75-6316 relating to the approval of tuition applications; or

"(2) any other provision of this title for which a procedure for resolving controversies is not expressly prescribed.

"The county superintendent shall hear the appeal and take testimony in order to determine the facts related to the controversy and may administer oaths to the witnesses that testify at the hearing. He shall prepare a written transcript of the hearing proceedings. The decision on the matter of controversy which is made by the county superintendent shall be based upon the facts established at such hearing.

"The decision of the county superintendent may be appealed to the superintendent of public instruction and, if it is appealed, the county superintendent shall supply a transcript of the hearing and any other documents entered as testimony at the hearing to the superintendent of public instruction."

"75-5709. Controversy appeal. The superintendent of public instruction shall decide matters of controversy when they are appealed from:

"(1) a decision of a county superintendent rendered under the provisions of section 75-5811; or

"(2) a decision of a county transportation committee rendered under the provisions of section 75-7015.

"The superintendent of public instruction shall make his decision on the basis of the transcript of the fact-finding hearing conducted by the county superintendent or county transportation committee and documents presented at the hearing. The superintendent of public instruction may require, if he deems necessary, affidavits, verified statements, or sworn testimony as to the facts in issue. The decision of the superintendent of public instruction shall be final, subject to the proper legal remedies in the state courts. Such proceedings shall be commenced no later than sixty (60) days after the date of the decision of the superintendent of public instruction.

"In order to establish a uniform method of hearing and determining matters of controversy arising under this title, the superintendent of public instruction shall prescribe and enforce rules of

practice and regulations for the conduct of hear-
ings and the determination of appeals by all
school officials of the state."

Issue 1. Appellant school board claims the 1972 Montana

Constitution grants control and supervision of the schools of

each district solely to the district boards of trustees and

that control is not to be shared with any other governmental

entity. On its face, this assertion is not accurate. Article

X, Section 9(3)(a), 1972 Montana Constitution provides:

"There is a board of public education to exer-
cise general supervision over the public school
system and such other public educational insti-
tutions as may be assigned by law. Other duties
of the board shall be provided by law."

Appellant claims that whatever control that is shared

with the board of public education does not apply to county or

state superintendents.

The fundamental purpose of construing a constitutional

provision is to give effect to the intent of its framers and

the people who adopted it. State ex rel. Toomey v. State Board

of Examiners, 74 Mont. 1, 238 P. 316, 320 (1925). The rule is

well established that, in construction of a constitution, re-

course may be had to proceedings of the constitutional conven-

tion. 16 Am Jr 2d, Constitutional Law § 88; Board of Public

Education v. Judge, ____Mont.____, 538 P.2d 11, 14, 32 St.Rep.

670 (1975). From a reading of the Convention transcripts, it

is clear the delegates contemplated only a preservation of the

powers of the local boards of trustees, not an expansion of

those powers. In the Transcript of Proceedings, 1972 Montana

Constitutional Convention, Vol. VIII, page 6259 Delegate Champoux

stated:

" * * * no matter what we say, perhaps, they'd
still have that fear that the local school dis-
tricts are going to lose some control and some
power. And if you will note in my remarks when
we get to nine, ten, and eleven, you will note

- 5 -

that we have eliminated the word, control in
the new public board of education where it is in
the old Constitution, and only use the word,
supervise.  By this amendment the intent is shown,
I think, that this body does want local control
to remain with the local school districts and
I heartily support it."  (Emphasis supplied.)

Delegate Heliker, at p. 6258, iterated:

" * * * Now, this committee has not provided, I
notice, for autonomy in the Constitution for local
school boards although that autonomy is provided
in the statutes which make the local school boards
bodies corporate.  At the same time, however, the
committee proposal in section eleven provides for
autonomy to a certain extent for the board of
regents which they propose to establish as a con-
stitutional board; and I feel, therefore, that
we should give constitutional recognition and status
to the local boards to--first of all, to allay the
fears which have been expressed, which I think are
well founded concerning the preservation of local
autonomy and, secondly, to give parallel treatment
to the governing boards of the public schools as
well as the public universities and colleges."
(Emphasis supplied.)

The only other delegate to speak on the section simply

urged the local school boards be given constitutional status.

From the underscored material, it appears the delegates were

chiefly concerned with the preservation of existing local board

control and power--not with expansion of local control and power.

The delegates wished to insure that the state legislature would

not strip the local boards of their powers.

Given this analysis, an examination of the authority

local boards possessed at the time of the convention becomes

important.  The Montana Supreme Court decided very early that

a school district was a public corporation with limited powers,

exercising through its board only such authority as is conferred

by law, either expressly or by necessary implication.  Finley

v. School District No. 1, 51 Mont. 411, 415, 153 P. 1010 (1915);

State ex rel. School District No. 4 v. McGraw, 74 Mont. 152, 240

P. 812 (1925).  Local boards of trustees have always been held

subject to legislative control.  Woolsey v. Carney, 141 Mont.

476, 378 P.2d 658 (1963); Abshire v. School District, 124 Mont. 244, 220 P.2d 1058 (1950); Wyatt v. School District No. 14, 148 Mont. 83, 417 P.2d 221, 22 ALR3d 1039 (1966); Teamsters Etc. Local No. 45 v. Cascade County School Dist. No. 1, 162 Mont. 277, 511 P.2d 339 (1973). In Abshire, for example, the Court held that a local board of trustees could not impose a mandatory retirement age that differed from state statute. Wyatt held that, by failing to follow the statutes in dismissing a teacher, the board's dismissal was void for want of jurisdiction. Statutory vacation benefits were extended to noncertified school district employees in Teamsters Local No. 45. Thus, local boards have been held subject to statutory requirements-- although the Court has held that where the legislature has failed to prescribe policy, the local boards have inferred general powers to act. Campana v. Calderhead, 17 Mont. 548, 44 P. 83, (1896).

The statutes in question were in existence at the time the constitutional article was adopted by the convention and were available for consideration of the convention. Further, a long series of cases decided prior to the convention had consistently upheld the appeals procedure. State ex rel. School District v. Trumper, 69 Mont. 468, 222 P. 1064 (1924); Kelsey v. School District No. 25, 84 Mont. 453, 459, 460, 276 P. 26 (1929); Peterson v. School Board, 73 Mont. 442, 236 P. 670 (1925); State ex rel. Saxtorph v. District Court, 128 Mont. 353, 275 P.2d 209 (1954); State ex rel. McDonnell v. Musburger, 111 Mont. 579, 111 P.2d 1038 (1941). Kelsey and Saxtorph specifically involved appeals from terminated contracts. In these cases the Court refused to take jurisdiction over the matter unless the appeals process had been exhausted. As the Court said in Kelsey:

"From the action of the board in discharging

the plaintiff she had a plain, speedy and adequate remedy--by appeal first to the county superintendent, and having been unsuccessful in that, to the superintendent of public instruction. * * *

" * * * The upshot, then, is * * * that the plaintiff had a plain, speedy and adequate remedy by appeal to the school officers, in whom the law reposes, by reason of their special fitness to decide, the duty of settling the controversy, which remedy the plaintiff did not exhaust * * *."

Thus, when the constitutional convention acted to preserve the existing power of the local boards of trustees, that power had already been limited by the statutes in question and the court affirmation of the statutes. Whether or not the statutes would have been constitutional if enacted after the Constitution was adopted is a question not decided here.

Issue 2. Appellant contends that Article VII, Section 4(2) provides that review of board of trustee decisions be made only in the district court and, therefore, any reviews by other governmental units are unconstitutional. Article VII, Section 4(2) provides:

"The district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law. The legislature may provide for direct review by the district court of decisions of administrative agencies." (Emphasis supplied.)

The use of the word "may" indicates the provision is permissive. The legislature has not adopted legislation pursuant to the section providing for appeal to the district court from the school board. The only legislation dealing with appeals from school board decisions provides for appeal through the county and state superintendents. Appellant's argument is therefore without merit.

Further, to adopt appellant's argument, the local boards of trustees would have to be recognized as separate administrative agencies, distinct from the rest of the educational administrative structure. As previously mentioned, the Montana

Supreme Court has consistently viewed the local boards as part of the administrative structure and held that appeals directly from the local boards will be rejected because administrative remedies were not exhausted. See: Trumper; Kelsey; Peterson; Saxtorph; and McDonnell. On the other hand, the Court has held that decisions by the State Superintendent of Public Instruction are reviewable by the courts. Potter v. Miller, 145 Mont. 197, 399 P.2d 994 (1965).

In Montana, there has traditionally been a reluctance on the part of the courts to intervene in educational decision making. As the Court stated in Kelsey:

> "It is unquestionably the policy of this state, as declared by the legislative assembly, that ordinary school controversies shall be adjusted by those who are specially entrusted with that duty. It is not the policy to encourage resort to the courts in such matters. So long as the school officers act legally and within the power expressly conferred upon them the courts will not interfere."

Adoption of appellant's contention would be contrary to this policy.

There is no doubt the local boards of trustees are subject to legislative control and do not have control over the local schools to the exclusion of other governmental entities. As the Court stated in Jay v. School District No. 1, 24 Mont. 219, 225, 61 P. 250 (1900), it is not for the courts to say whether the provisions of the statute are wise or not; the duty of the courts is to require enforcement thereof as they find it. Whether or not the statutory provisions constitute an exercise of sound policy decision making is not at issue here. What is at issue is whether or not the legislature had the power to enact the statutes in controversy. In this case, the answer is affirmative.

The judgment of the district court is affirmed.

_John Conway Harrison_

_Frank I. Haswell_

_Gene B. Daly_

Justices

_R. R. Lessley_

Hon. W. W. Lessley, District Judge,
sitting in place of Mr. Chief Justice
James T. Harrison.

_E. Gardner Brownlee_

Hon. E. Gardner Brownlee, District
Judge, sitting in place of Mr. Justice
Wesley Castles.

- 10 -