No. 82-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

KARLA WHITE,

Plaintiff and Respondent,

vs.

STATE OF MONTANA,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

John Bobinski and Michael Young argued, Dept. of Admin.,
Helena, Montana

For Respondent:

Hoyt and Trieweiler, Great Falls, Montana
Erik B. Tueson argued, Great Falls, Montana

For Amicus Curiae:

Anderson, Edwards & Molloy, Billings, Montana
Richard W.Anderson argued, Billings, Montana
Anderson, Brown, Gerbase, Cebull & Jones, Billings, Montana
James L. Jones and Ann E. Wilcox, Billings, Montana
Michael J. McKeon, (Donna Bartel) Anaconda, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Jim Nugent, City Attorney, Missoula, Montana
Peterson, Schofield & Leckie, Billings, Montana
Kenneth D. Peterson, Billings, Montana
French, Grainey & Duckworth, Ronan, Montana
Edward K. Duckworth (Donna Bartel) Ronan, Montana
J. Daniel Hoven, Legal Services Division, Helena, Montana
David Gliko, City Attorney, Great Falls, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Burgess, Joyce & Whelan, Butte, Montana
Thomas F. Joyce, Amy Foran, Butte, Montana
Milodragovich, Dale & Dye, Missoula, Montana
Harold V. Dye, Missoula, Montana
Alexander and Baucus, Great Falls, Montana
Neil Ugrin, Co. of Cascade & City of Great Falls, Great
Falls, Montana

Submitted: February 3, 1983

Decided: April 8, 1983

Filed: APR 8 1983

_Ethel M. Harrison_

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The State of Montana appeals from a summary judgment entered by the District Court of the Eighth Judicial District, Cascade County, which found section 2-9-104, MCA, limitation on governmental liability for damages in tort, and section 2-9-105, MCA, providing for state immunity from exemplary and punitive damages, both to be unconstitutional.

Plaintiff filed an action seeking damages for personal injury alleging negligence on the part of defendant State of Montana. The State filed an answer alleging that the government was immune from liability for noneconomic damages and for punitive damages. Plaintiff moved the court for summary judgment on these defenses, claiming the limitations found in the State Tort Claims Act are unconstitutional and void.

Plaintiff Karla White intends to prove that as a result of the reckless conduct of the State of Montana, she was attacked by a violent and dangerous criminal, and that as a result, she has sustained severe emotional injuries which will significantly affect her ability to live a happy and fulfilling life, although her demonstrable economic losses will be relatively insignificant. The allegation of gross negligence against the State of Montana is premised upon the State permitting the allegedly violent and dangerous person to escape from the mental hospital at Warm Springs and remain free for a period of five years without serious attempts to locate and reincarcerate this individual. Plaintiff was attacked in Great Falls, Montana, approximately five years after the inmate escaped from Warm Springs.

We find the following issues to be dispositive:

1.  Do the limitations on recovery against the State of Montana as provided for in section 2-9-104, MCA, violate

-2-

constitutional guarantees of equal protection?

2. Does the prohibition against exemplary and punitive damage assessments as provided for in section 2-9-105, MCA, violate constitutional guarantees of equal protection and due process?

DOES SECTION 2-9-104, VIOLATE CONSTITUTIONAL GUARANTEES OF EQUAL PROTECTION?

Section 2-9-104, MCA, provides as follows:

"(1) Neither the state, a county, municipality, taxing district, nor any other political sub-division of the state is liable in tort action for:

(a) noneconomic damages; or

(b) economic damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $300,000 for each claimant and $1 million dollars for each occurrence.

(2) The legislature or the governing body of a county, municipality, taxing district, or other political subdivision of the state may, in its sole discretion, authorize payments for noneconomic damages or economic damages in excess of the sum authorized in subsection (1)(b) of this section, or both, upon petition of plaintiff following a final judgment. No insurer is liable for such noneconomic damages or excess economic damages unless such insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of the limitation stated in this section or specifically agrees to provide coverage for noneconomic damages, in which case the insurer may not claim the benefits of the limitation specifically waived."

Plaintiff attacks section 2-9-104(1), MCA, by arguing it violates equal protection by classifying people in three different ways:

1. It classifies victims of negligence who have sustained noneconomic damage by whether they have been injured by a nongovernment tort-feasor or a government tort-feasor. It totally denies any recovery to the latter class.

2. It classifies victims of government tort-feasors by whether they have suffered economic damages or noneconomic damages. It allows recovery to the former group up to

$300,000 while it totally denies recovery to the latter group.

3. It classifies victims of government tort-feasors by the severity of the victims' injuries. It grants recovery to those victims who have not sustained significant injury by allowing them to recover up to $300,000 in economic damages. It discriminates against the seriously injured victims by denying recovery for any injuries over $300,000.

The constitutional guarantee of equal protection requires all persons to be treated alike under like circumstances. U.S. Const., Amend. XIV, Section 1; 1972 Mont. Const., Art. II, Section 4. If a statute affects a "fundamental right," it must be measured by a strict scrutiny test. Dunn v. Blumstein (1972), 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274, 284; Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; Matter of Estate of Merkel (1980), ____ Mont. ____, 618 P.2d 872, 37 St.Rep. 1782. Application of this test requires that the statutory scheme be found unconstitutional unless the State can demonstrate that such law is necessary "to promote a compelling government interest." Dunn v. Blumstein, supra.

The State argues that the right to bring a civil action for personal injuries is not a fundamental right and that the statutory scheme must be judged by the less burdensome rational basis test. We reject the State's argument and adopt that of the plaintiff.

Article II, section 16 of the Montana Constitution guarantees that all persons shall have a "speedy remedy . . . for every injury of person, property, or character." In Corrigan v. Janney, (1981), ____ Mont. ____, 626 P.2d 838, 38 St.Rep. 545, this Court held that it is "patently unconstitutional" for the legislature to pass a statute which denies a certain

class of Montana citizens their causes of action for personal injury and wrongful death. We affirm and refine our holding in Corrigan v. Janney, supra; we hold that the Montana Constitution guarantees that all persons have a speedy remedy for every injury. The language "every injury" embraces all recognized compensable components of injury, including the right to be compensated for physical pain and mental anguish and the loss of enjoyment of living. Therefore, strict scrutiny attaches.

The State argues that it has shown a compelling state interest in "insuring that sufficient public funds will be available to enable the State and local governments to provide those services which they believe benefit their citizens and which their citizens demand." The State further argues that the government has to engage in a wide variety of activities, some of which are extremely dangerous and not confronted by private industry. The District Court found that, "this 'bare assertion', however, 'falls far short of justifying' a discrimination which infringes upon fundamental rights." We agree.

The government has a valid interest in protecting its treasury. However, payment of tort judgments is simply a cost of doing business. There is no evidence in the record that the payment of such claims would impair the State's ability to function as a governmental entity or create a financial crisis. In fact, the State of Montana does have an interest in affording fair and reasonable compensation to citizens victimized by the negligence of the State. Therefore, the strict scrutiny test mandated by the implication of a fundamental right has not been satisfied and the statute prohibiting recovery for noneconomic damage is unconstitutional

under the Montana State Constitution.

We recognize that some limit on the State's liability may comport with the constitutional guarantees of equal protection. However, such a limitation cannot discriminate between those who suffer pain and loss of life quality and those who primarily suffer economically.

We are left, in reviewing the constitutionality of section 2-9-104, MCA, with the question of whether the limitation on economic damages of $300,000 for each claimant and $1,000,000 for each occurrence is constitutional. If we were to leave intact that portion of section 2-9-104, MCA, which limits economic damages to the sum of $300,000 for each claimant and one million dollars for each occurrence, we would then be left with a situation where recovery for pain and suffering was unlimited and recovery for economic damages was limited as prescribed by the statute. New discrimination problems would then exist; those whose primary loss was intangible could recover without limit but those who suffer tangible losses would be limited. Furthermore, at this point the state has failed to demonstrate a compelling state interest which would justify any limitation. We therefore declare section 2-9-104, MCA, in its entirety, to be unconstitutional.

DOES THE PROHIBITION AGAINST EXEMPLARY AND PUNITIVE DAMAGES FOUND IN SECTION 2-9-105, MCA, VIOLATE EQUAL PROTECTION?

The punitive damage question is different from the issue of limiting compensatory damages. Plaintiff has a constitutional right to redress for all of her injuries but she does not have a constitutional right to recover punitive damages. In reviewing the constitutionality of a statute immunizing the State from punitive damage assessments, we apply the "rational basis" test rather than the "strict scrutiny" test.

There exists a rational basis for distinguishing

-6-

governmental entities from others in the application of punitive or exemplary damage law. The primary purpose of assessing punitives is to punish the wrongdoer and through that punishment, deter future unlawful conduct of the tort-feasor and others who might be inclined to engage in like conduct. The problem with assessing punitive damages against the government is that the deterrent effect is extremely remote and innocent taxpayers are, in fact, the ones punished. Those taxpayers have little or no control over the actions of the guilty tort-feasor.

This problem was addressed by the United States Supreme Court in City of Newport v. Fact Concerts, Inc. (1981), 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616, wherein the Court stated:

> "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. See Restatement (Second) of Torts, §908 (1979); W. Prosser, Handbook of the Law of Torts 9-10 (4th ed. 1971). Regarding retribution, it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. Cf. Owen v. City of Independence, 445 U.S., at 657, 100 S.Ct., at 1418. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggest that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." 453 U.S. at 266-67, 101 S.Ct. at 2759-60, 69 L.Ed.2d at 632.

We find that section 2-9-105, MCA, constitutionally creates immunity from punitive damage assessments for governmental entities.

Amicus curiae has presented the issue of whether the limitations set forth in section 2-9-104, MCA, are unconstitutional in that the limitations were not voted upon by the people

-7-

but were adopted by the legislature. Amicus argues that, by adopting the limitations the legislature amended the constitution. We find this argument interesting but not dispositive in light of our holding that the questioned section violates equal protection of law.

The judgment of the District Court finding section 2-9-104, MCA, unconstitutional is affirmed. The judgment of the District Court finding section 2-9-105, MCA, unconstitutional is vacated.

We remand this case for trial to be conducted in conformity with the views herein expressed.

_____
Justice

We concur:

_____
John Conway Harrison

_____
Daniel J. Shea

_____
John C. Sheehy

_____

_____
Justices

Mr. Justice L. C. Gulbrandson concurring in part and dissenting in part:

I concur with the holding of the majority opinion that the state and other governmental entities are immune from exemplary and punitive damages and that noneconomic damages are recoverable, but I respectfully dissent from the holding that section 2-9-104, MCA, is, in its entirety, unconstitutional.

That holding, in my opinion, is somewhat gratuitous inasmuch as section 2-9-104(1)(b), MCA, was not raised or argued before the District Judge. Counsel for plaintiff, in his reply brief below, filed February 25, 1982, stated: "Plaintiffs damages are, for all intents and purposes, noneconomic." Section 2-9-104(1)(b), setting a limit on the recovery for economic damages at $300,000 for each claimant and $1 million for each occurrence, was not, therefore, properly before the District Court.

By constitutional amendment, the legislature was clearly given authority to structure governmental immunity by two-thirds vote of each house. The legislature, in setting the limits at $300,000 and $1 million and in devising the post-judgment procedures (2-9-104(2)), apparently was balancing the concept of ideal justice and the need for fiscal security, necessary for governmental entities to, in fact, provide obligatory services to the public. The Wisconsin Supreme Court, in Sambs v. City of Brookfield (1980), 97 Wis.2d 356, 293 N.W.2d 504, used the following language to describe the problem.

> "It is the legislature's function to evaluate the risk, the extent of exposure to liablity, the need to compensate citizens for injury, the availability of and cost of insurance, and the financial condition of the governmental units. It is the legislature's function to structure the statutory provisions, which will protect the public interest in reimbursing the victim and in maintaining government services and which will be fair and reasonable to the victim and at the same time will be realistic regarding the financial burden to be placed on the taxpayers."

The obligations imposed upon governmental entities must be performed, even though the risks inherent in performing absolute obligations are great. The responsibility for confining,

housing, and rehabilitation of persons convicted of criminal activity; the treatment and supervision of mental patients at government institutions or under government programs; the planning, construction, and maintenance of thousands of miles of highways; the operation of municipal transportation systems and airport terminals; and the operation and maintenance of schools, playgrounds, and athletic facilities are only a few of those obligations.

Section 2-9-104(2), now declared unconstitutional by the majority, contains language limiting the exposure of insurers. Undoubtedly, there are insurance contracts in existence, which now should be rewritten to provide coverage for the unlimited liability facing governmental entities.

In my view, this Court could, and should, find that the $300,000 and $1 million limits apply to economic and noneconomic losses, and that the post-judgment procedures for excess judgments should be retained, because those procedures include entities other than the legislature.

_____
Justice

Mr. Justice Fred J. Weber concurs and dissents as follows:

I concur in the holding of the majority that section 2-9-105, MCA, creates immunity from punitive damage assessments for governmental entities. I dissent from the remainder of the majority holding.

The majority concludes that Article II, Section 16 of the Montana Constitution guarantees that all persons have a speedy remedy for every injury. A review of the history of this constitutional provision, along with the interpretations of this Court, raises serious challenges to that conclusion.

Article III, Section 6 of the 1889 Montana Constitution stated:

> "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay."

Article II, Section 16 of the 1972 Montana Constitution ("Section 16") used the same wording regarding courts of justice and speedy remedy, placing a period following the word "character." The 1972 Constitution then inserted a new sentence providing that no person should be deprived of full legal redress for injury incurred in employment with certain exceptions in connection with Workmen's Compensation, which is not applicable. The last sentence of the provision is identical to the final clause in the 1889 paragraph regarding the administration of justice.

A review of the 1972 Constitutional Convention proceedings shows that the only stated intent to broaden or change the 1889 Constitutional provision concerned the question on Workmen's Compensation. We must conclude that the 1972 Convention did not intend to change the existing constitutional provision with regard to courts of justice and speedy remedy.

11

Initially the decisions of this Court were consistent in the analysis of "Section 16" and its constitutional predecessor. In Shea v. North-Butte Mining Co. (1919), 55 Mont. 522, 179 P. 499, the plaintiff miner sought recovery for personal injury alleged to have been suffered through the negligence of the defendants in the course of plaintiff's employment as a miner. The claim of plaintiff in Shea is directly comparable to the present case. Plaintiff contended that the limited right of recovery through the Industrial Accident Board deprived him of access to the courts as guaranteed under the constitution. This Court stated the contention of the plaintiff as follows:

> "[W]e gather from the brief of counsel that their objection is that, though the Act is elective, it in effect closes access to the courts by the injured employee and compels him to seek relief, if he can obtain any at all, through the Industrial Accident Board. In other words, since the section declares in expressed terms that there shall be a judicial remedy for every wrong suffered by one person at the hands of another, it is beyond the power of the legislature to provide any other remedy, though such other remedy is entirely optional." Shea, 55 Mont. at 530, 179 P. at 501.

In response to this contention, the Court then reached a conclusion directly contrary to the holding of the majority in the present case. This Court stated:

> "But counsel are in error in supposing that for this reason the Compensation Act is repugnant to the section of the Constitution quoted. Their contention is based upon a misconception of the scope of the guaranty therein contained. A reading of the section discloses that it is addressed exclusively to the courts. The courts are its sole subject matter, and it relates directly to the duties of the judicial department of the government. It means no more nor less than that under the provisions of the Constitution and laws constituting them, the courts must be accessible to all persons alike, without discrimination, at the time or times and the place or places appointed for their sitting, and afford a speedy remedy for every wrong recognized by law as being remediable in a court. The term 'injury' as therein used, means such an injury as the law recognizes or declares to be actionable. Many of the state Constitutions contain similar provisions, and the courts,

12

including our own, have held either expressly or impliedly that their meaning is that above stated. (cases cited) . . . [A]t this late day it cannot be controverted that the remedies recognized by the common law in this class of cases, together with all rights of action to arise in future may be altered or abolished to the extent of destroying actions for injuries or death arising from negligent accident, so long as there is no impairment of rights already accrued. This necessarily follows from the proposition, well established by the courts everywhere, that no one has a vested right in any rule of the common-law." Shea, 55 Mont. at 532-34, 179 P. at 502-03. (emphasis added)

The holding in Shea was restated in Reeves v. Ille Electric Company (1976), 170 Mont. 104, 551 P.2d 647. Plaintiff sought damages for the death of a student electrocuted in a whirlpool bath in the Montana State University Fieldhouse at Bozeman. The architect and the builder contended that plaintiff was barred from suit under an architects and builders statute, which limited actions for damages to commencement within ten years after completion of the improvement. Plaintiff contended that the statute was unconstitutional under "Section 16" because it denied the plaintiff access to the courts and a speedy remedy for injuries and damages. This Court quoted the above portions of the Shea opinion, as well as other provisions, then concluded:

"Assuming arguendo, that plaintiff would have a claim under common law, the legislature is not constitutionally prohibited from eliminating a common law right as it did in Shea and Stewart [Stewart v. Standard Publishing Co. (1936), 102 Mont. 43, 55 P.2d 694.] In Section 93-2619, the legislature did not interfere with any vested right of plaintiff, but simply cut off accrual of the right to sue after ten years." 170 Mont. at 110-111, 551 P.2d at 651. (emphasis added)

In Reeves, this Court affirmed the judgment of dismissal in favor of the architect and the summary judgment in favor of the electrical contractor, thereby affirming the statement in Shea that the legislature may eliminate a remedy

13

recognized by the common law, together with all rights of action for an injury or death, nothwithstanding the constitutional provisions of "Section 16."

This Court again considered the question in Linder v. Smith (1981), ____Mont.____, 629 P.2d 1187, 38 St.Rep. 912, in which the plaintiff sought a determination of the constitutionality of the Montana Medical Malpractice Panel Act. The plaintiff contended that the effect of the Act was to deny him right of access to the courts in violation of "Section 16" of the Constitution. In holding against the plaintiff on this issue, this Court stated:

> "The courts addressing this issue have noted that access to the courts is not an independent fundamental right; access is only given such a status when another fundamental right - such as the right to dissolve the marital relationship - is at issue, and no alternative forum exists in which to enforce that right. Boddie v. Connecticut (1971), 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113. In cases not involving a fundamental right, access may be hindered if there exists a rational basis for doing so. Woods [v. Holy Cross Hospital (5th Cir. 1979), 591 F.2d 1164]; Paro [v. Longwood Hospital (Mass. 1977), 369 N.E.2d 985]; Ortwein v. Schwab (1973), 410 U.S. 656, 93 St.Ct. 1172, 35 L.Ed.2d 572." Linder, 629 P.2d at 1190, 38 St.Rep. at 915. (emphasis added)

Up to 1981, the holdings of this Court were consistent in the interpretation of the 1889 constitutional Article III, Section 6 and the 1972 constitutional Article II, Section 16. We would also note that by enactment of the original provisions of the 1889 Constitution in 1972, the Constitutional Convention is considered to have adopted the interpretations of those constitutional provisions by the Montana Supreme Court. A general rule is stated in 16 C.J.S. Constitutional Law §35 (1956):

> "Where a constitutional provision similar or identical to that contained in a prior constitution or statute, or in the constitution of another state, is adopted, it is presumed that such provision was adopted with the construction previously placed on it."

14

No Montana case has addressed the question of a prior constitutional provision. With regard to the theory of statutory interpretation and approval of prior interpretations, 2A C. Sands, Sutherland Statutory Construction §45.12 (4th ed. 1973), p. 37:

"Judicial interpretation of statutes is conditioned by various additional presumptions which the courts indulge on the basis of a belief in their essential reasonableness. Thus, legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, the rules of statutory construction, and judicial decisions that if a change occurs in legislative language a change was intended in legislative result, and that reenactment of a statute without change in its language indicates approval of interpretations rendered prior to the reenactment. On similar grounds, it is not presumed that the common law is changed by statutory enactment; and statutes in derogation of the common law are strictly construed." (emphasis added)

This rule of statutory construction is applicable to the interpretation of the constitutional provisions of Montana. See State v. Cardwell (1980), ____ Mont. ____, 609 P.2d 1230, 1232, 37 St. Rep. 750, 751-752; Keller v. Smith (1976), 170 Mont. 399, 404, 553 P.2d 1002, 1006; School Dist. No. 12, Phillips County v. Hughes (1976), 170 Mont. 267, 552 P.2d 328, 332.

In Corrigan v. Janney (1981), ____Mont____, 626 P.2d 838, 38 St.Rep. 545, which was decided two months prior to Linder v. Smith, we find a contradictory position to have been taken by this Court. In Corrigan, pertaining to the electrocution of a man in a bathtub, we reached the decision which is relied upon by the majority. After quoting "Section 16" with regard to speedy remedy, we (including the undersigned) stated:

"It would be patently unconstitutional to deny a tenant all causes of action for personal injuries or wrongful death arising out of the alleged negligent management of rental premises by a landlord. If this action were to be taken away, a substitute remedy would have to be provided.

15

> Arguably, the repair and deduct statute provides an alternative remedy for damage to the leasehold interest. However, in no way can it be considered an alternative remedy for damages caused by personal injury or wrongful death.
>
> ". . .
>
> "In summary, we overrule Dier v. Mueller, supra, and hold that our Constitution requires that plaintiff have a form of redress for wrongful death and survival damages." Corrigan, 626 P.2d at 840-841, 38 St.Rep. at 548-549.

Unfortunately, in Corrigan we failed to analyze any of the above-cited cases, and also failed to distinguish or overrule the same. In addition, we did not consider the effect of reenactment of "Section 16" in the 1972 Constitution. Unfortunately our constitutional statements in Corrigan were not supported, and we could have overruled Dier v. Mueller without a constitutional foundation. It now becomes particularly unfortunate when the unsupported holding of Corrigan is expanded to form the foundation for the present majority opinion.

Section 2-9-104, MCA, adopted in 1977, with a modification by amendment in 1979, has been found unconstitutional by the majority opinion. It is important to analyze the history and background of this section. It was enacted as a result of power given to the Legislature under Article II, Section 18 of the Montana Constitution. As originally adopted in 1972, Section 18 said only the following:

> "The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property."

The proceedings of the Constitutional Convention show an almost universal approval of total elimination of sovereign immunity. However, that viewpoint was expressly rejected by the vote of the people. An amendment was proposed by Senate Joint Resolution No. 64, laws of 1974, which was adopted by

16

the people at the general election of November 5, 1974. The amendment added the following exception to Section 18:

". . . except as may be specifically provided by law by a 2/3 vote of each house of the legislature."

The grant of power to the Legislature contained in that exception was made two years after the Constitutional Convention, and is the most recent expression contained in the Constitution of the will of the majority of the voters of Montana regarding sovereign immunity. Following this referendum vote, in 1977 the Legislature by a 2/3 vote of both houses adopted Section 2-9-104, MCA. In a similar manner, it amended that section in 1979. There must be a balancing of Sections 16 and 18, Article II of the Montana Constitution. "All constitutional provisions have equal dignity." 16 C.J.S. Constitutional Law §23. Unless Section 2-9-104, MCA violates federal constitutional provisions, I do not see how the majority can disregard Section 18 and conclude that "Section 16" grants remedies which unquestionably override the specific grant of legislative authority in Section 18.

The test to be applied to determine if equal protection has been given was recently enunciated in Matter of Estate of Merkel (1980) ____Mont.____, 618 P.2d 872, 874, 37 St.Rep. 1782, 1784:

"The legislature is empowered to classify persons for purposes of legislation, State v. Craig (1976), 169 Mont. 150, 156, 545 P.2d 649, 653, and in reviewing a statute, this Court presumes that the statute is constitutional. Great Falls Nat. Bk. v. McCormick (1968) 152 Mont. 319, 323, 448 P.2d 991, 993. Appellant admits that this classification does not involve a 'fundamental right' or a 'suspect class', which would require a finding by this Court of a compelling state interest in order to uphold the class. State v. Jack (1975), 167 Mont. 456, 461, 539 P.2d 726, 729. Rather, this Court need only determine that the 'classification [is] reasonable, not arbitrary, and must rest upon some ground of difference having a

17

fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. . .' State v. Craig, supra, 169 Mont. at 156, 545 P.2d at 653.

"The appellant has the burden of proving that the classification is arbitrary, State v. Jack, supra, 167 Mont. at 461, 539 P.2d at 729, a burden which appellant has not sustained here."

In accordance with the constitutional provisions and interpretations of this Court as previously cited, I would hold that "Section 16" does not contain a grant of a fundamental right. As a result the plaintiff has the burden of proving that the classification is arbitrary. Plaintiff has not met that burden. In view of the provisions of Article II, Section 18 of the Montana Constitution, under which the Legislature was specifically granted the right to provide for sovereign immunity by a 2/3 vote of each house, I would reverse the District Court's holding that Section 2-9-104, MCA, is unconstitutional. Examples of statutory limitations on damage awards which have withstood equal protection challenges are contained in the following: Sambs v. City of Brookfield (1980) 97 Wis.2d 356, 293 N.W.2d 504,cert. denied, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497; Estate of Cargill v. City of Rochester (1979) 119 N.H. 661, 406 A.2d 704, appeal dism'd. 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754; State v. Silva, (1971) 86 Nev. 911, 478 P.2d 591; Siefert v. Standard Paving Co. (1976) 64 Ill.2d 109, 355 N.E.2d 537; and Johnson v. St. Vincent Hospital, Inc. (1980) ____ Ind. ____, 404 N.E.2d 585. Based upon the rules described in the majority opinion, I conclude that the right to bring the present civil action for personal injuries is not a fundamental right and that the rational basis test therefore should be applied. I would find that there is a rational basis for the distinction between non-economic

damages and economic damages as contained in section 2-9-104, MCA.

Further, even if we accept the majority conclusion that there has been a denial of equal protection under the United States Constitution, a different conclusion should be reached. The strongest argument under the majority theory is the claim of discrimination between those who suffer economic damages and those who suffer non-economic damages. Having reached the conclusion that the classification between those two types of damages justifies a declaration of unconstitutionality under the equal protection clause, the majority could still give effect to the intent of the Legislature. This could be done without a declaration that the entire section is unconstitutional. This Court has previously held that if a part of a statute is invalid but severable, the portion which is constitutional may stand while the unconstitutional part is stricken. In Montana Auto. Ass'n v. Greely (1981) ____ Mont. ____, 632 P.2d 300, 311, 38 St.Rep. 1174, 1187, this Court stated:

> "If an invalid part of a statute is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. State v. Fire Department Relief Association, Etc. (1960) 138 Mont. 172, 178, 355 P.2d 670, 673. A statute 'is not destroyed in toto because of an improper provision, unless such provision is necessary to the integrity of the statute or was the inducement to its enactment.' Hill v. Rae (1916), 52 Mont. 378, 389-90, 158 P. 826, 831. If, when an unconstitutional portion of an act is eliminated, the remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained. Gullickson v. Mitchell (1942), 113 Mont. 359, 375, 126 P.2d 1106, 1114."

Applying this principle to section 2-9-104, MCA, we find that it is possible to eliminate from section 2-9-104, MCA, those portions which are lined through, leaving the balance of the section capable of execution in accordance with the apparent

19

legislative intent.    The following sets out such changes

which could be made in section 2-9-104, MCA:

> "(1)    Neither the state, a county, municipality,
> taxing    district,    nor    any    other    political
> subdivision of the state is liable in tort action
> for~~:~~
>
> ~~(a)--Non-economic-damages;-or~~
>
> ~~(b)--Economic~~ damages suffered as a result of an
> act or omission of an officer, agent, or employee
> of that entity in excess of $300,000 for each
> claimant and $1 million for each occurrence.
>
> (2)  The legislature or the governing body of a
> county, municipality, taxing district, or other
> political subdivision of the state may, in its sole
> discretion, authorize payments for ~~non-economic~~
> ~~damages-or-economic~~ damages in excess of the sum
> authorized in ~~subsection--(1)-(b)--of~~ this section, ~~or~~
> ~~both,~~ upon petition of plaintiff following a final
> judgment.    No    insurer    is    liable    for    such
> ~~non-economic damages or excess economic~~ damages
> unless such insurer specifically agrees by written
> endorsement to provide coverage to the governmental
> agency involved in amounts in excess of the
> limitations stated in this section, ~~or specifically~~
> ~~agrees to provide coverage for non-economic~~
> ~~damages;~~ in which case the insurer may not claim
> the benefits of the limitations specifically
> waived."

If we were to eliminate the portions of the section

which are lined through, the remaining portion contains the

essential elements of the section, that being that the State

or other political subdivision is not liable in tort action

for damages in excess of $300,000 for each claimant and one

million dollars for each occurrence, with the further

provisions as to legislative authorization of payments or

payments under insurance coverage which may exceed the

previous limits.    It seems to me that we can properly

conclude that this is the action which the Legislature would

have taken had it been aware of a constitutional limitation

on its right to exclude non-economic damages.  Certainly such

an interpretation recognizes legislative intent as contrasted

to a declaration of unconstitutionality for the entire

section.    In addition such an interpretation recognizes the

right on the part of the people of Montana to allow some degree of sovereign immunity as contrasted to the reinstatement of a ban on sovereign immunity.

_____
Justice

I concur in the foregoing dissent of Justice Weber.

_____
Chief Justice

21